MARICARMEN RAMOS DE SZENDREY y OTROS, recurridos, *v.* LUIS FELIPE COLÓN FIGUEROA y OTROS, RECURRENTES.

*Número:* CC-2000-797 *Resuelto:* 6 de marzo de 2001

*Víctor Hernández*, abogado de la parte peticionaria; *Maricarmen Ramos de Szendrey* y *Raúl Tirado Rodríguez*, abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

El 16 de julio de 1998 la Lic. Maricarmen Ramos de Szendrey y el Lic. Raúl Tirado Rodríguez (recurridos) instaron demanda de sentencia declaratoria y cobro de honorarios profesionales contra dos de los diez clientes a quienes habían representado en un complejo caso de ejecución de hipoteca que se dilucidaba en el Tribunal Superior de Ponce.[1] Estos son el Ing. Luis Felipe Colón Figueroa, la Sra. Marisely Colón Colón y la Sra. Sonia M. Colón Figueroa (los Colón o los recurrentes). La demanda sobre cobro se basa en una estipulación escrita de servicios profesionales en la cual se pactaron honorarios contingentes de un 10% del valor líquido real de los bienes que se le adjudicaran a los clientes en pago de su acreencia hipotecaria.

El 14 de septiembre de 1998 los recurrentes contestaron la demanda. Alegaron como defensa afirmativa, *inter alia*, que los servicios no se habían prestado; que la cantidad reclamada era irrazonable; que las cláusulas del contrato de servicios profesionales (en particular lo relativo al pago de honorarios) eran ambiguas; que los honorarios contingentes no se pactaron para el mejor beneficio de los clientes o su preferencia, y que parte de la deuda ya había sido satisfecha.

El 8 de febrero de 1999 los recurridos presentaron una moción para que se dictara sentencia sumaria parcial, al amparo de la Regla 36 de Procedimiento Civil, 32 L.P.R.A.

---

[1] *Lourdes Figueroa Clavell y otros v. Pedro J. Nazario y otros*, caso Civil Núm. CS-1982-4494.

Ap. III. En su moción los recurridos alegaron que no existe controversia de que la suma adeudada por los recurrentes es de 10% del valor líquido real de los bienes que le fueron adjudicados. Adujeron, además, que según lo estipulado en el contrato de servicios profesionales, lo único que resta y procede es la designación de un tasador que estime el valor líquido real de los terrenos adjudicados a los recurrentes como resultado del trámite del pleito de ejecución de hipoteca.

En apoyo de la Solicitud de Sentencia Sumaria Parcial, los recurridos acompañaron múltiples documentos acreditativos de los servicios profesionales prestados —incluyendo una copia de la carta-contrato que vincula a las partes— y otros documentos acreditativos de la renuencia de los recurrentes a satisfacer los honorarios reclamados. Solicitaron que el tribunal declarase sentencia sumaria a su favor, y que ordenase la procedencia de la designación de un tasador.

El 12 de febrero de 1999 los recurridos presentaron su Oposición a Solicitud De Sentencia Sumaria Parcial. En su oposición alegaron que aún quedan asuntos importantes por dilucidar y hechos sobre los cuales existe controversia, a saber, la validez de los honorarios contingentes pactados; si en efecto fueron prestados los servicios profesionales de los recurridos; la razonabilidad de los honorarios, y el vencimiento, liquidez y exigibilidad de lo reclamado. Solicitaron, finalmente, que se declarara sin lugar la moción de los recurridos por entender que "[e]stas determinaciones le corresponden al tribunal y no a un tasador". Apéndice, pág. 172. Sin embargo, los recurrentes no acompañaron documento alguno en oposición para controvertir los hechos alegados en la solicitud de los recurridos.

El 3 de septiembre de 1999 el Tribunal de Primera Instancia (TPI) celebró una vista para escuchar los argumentos de las partes sobre la procedencia de una sentencia sumaria.

538

El 15 de octubre de 1999 el TPI dictó una escueta Resolución mediante la que declaró con lugar la solicitud de sentencia sumaria parcial y le concedió a las partes un término de treinta (30) días para que sometieran el nombre del tasador que determinaría el valor de los terrenos adjudicados a los recurrentes. El TPI señaló, además, una vista sobre el estado del caso para el 15 de diciembre de 1999.([2])

El 18 de enero de 2000 los recurridos presentaron una moción titulada "Solicitud de Orden en Aseguramiento de Sentencia" para embargar varios bienes inmuebles pertenecientes a los recurrentes, al amparo de la Regla 56.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Solicitaron, además, que se dictara la procedencia del embargo sin vista previa, pero con la debida prestación de una fianza. Apéndice, págs. 174–179.([3]) Los recurridos justificaron el carácter *ex parte* de su solicitud aduciendo que, conforme a la doctrina de *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 900 (1993), era procedente embargar de forma *ex parte*. Primero, porque alegadamente existían "circunstancias extraordinarias", según definidas en la jurisprudencia, y segundo, porque los recurridos demostraron "en

([2]) A continuación transcribimos la Resolución del TPI de 15 de octubre de 1999:

"Examinadas las alegaciones de las partes, la Solicitud de Sentencia Sumaria Parcial presentada por la parte demandante, la Oposición presentada por la parte demandada, los exhibits presentado[s] en apoyo de dichos escritos y los argumentos presentados en la vista del 3 de septiembre de 1999, resolvemos declarar *CON LUGAR* la solicitud de la parte demandante.

"Se le concede a las partes el término de 30 días para que someta el nombre del tasador que determinará el valor de los terrenos.

"Se señala vista sobre el estado del caso para el *15 de diciembre de 1999* a las 9:00 de la mañana.

"Notifíquese." Apéndice, pág. 173.

([3]) En específico, los recurridos solicitaron la "anotación de embargo por la suma de $50,000.00 a anotarse ... previa la prestación de fianza, sobre las participaciones o cualquier otro interés que los demandados tengan sobre las fincas especificadas en el párrafo 3 de este escrito, distribuid[os] dichos $50,000.00 sobre las fincas[,] según expuesto en el párrafo 4 ...". Apéndice, pág. 179.

los propios autos del caso la probabilidad de prevalecer en [sus] méritos". Apéndice, pág. 178.

En cuanto a las "circunstancias extraordinarias" que alegadamente hacían meritorio el embargo *ex parte* solicitado por los recurridos, éstos alegaron que obtuvieron "información que les causa el fundado temor de que los [recurrentes] habrán de recurrir a la Corte de Quiebras antes que se haya obtenido un crédito asegurado ...". Apéndice, pág. 178. Sin embargo, no acompañaron declaración jurada ni prueba alguna que sustentara su alegación.

En cuanto al segundo punto, los recurridos adujeron que mediante la Resolución de 30 de octubre de 1999, el foro de instancia supuestamente "adjudicó" el hecho de que los servicios requeridos mediante el contrato fueron en efecto prestados y que, por tanto, sólo "procede que éstos honren el contrato, incluyendo su fórmula para liquidar la deuda". Apéndice, pág. 178. Así, pues, los recurridos concluyen que la resolución del TPI es un documento público que "refleja la certeza de prevalecer" en los méritos. Íd.

Asimismo, los recurridos radicaron conjuntamente con su moción de Solicitud de Orden en Aseguramiento de Sentencia, un proyecto de "Mandamiento" de embargo dirigido al Registrador de la Propiedad para que procediese a anotar el embargo solicitado, y una Moción Consignando Fianza de mil dólares ($1,000). Apéndice, págs. 180 y 181–185.

El mismo día en que los recurridos presentaron su Solicitud de Orden en Aseguramiento de Sentencia, es decir el 18 de enero de 2000, el TPI concedió a los recurridos lo solicitado al firmar el proyecto de Mandamiento de embargo. Apéndice, págs. 181–185.

En la orden del tribunal se dispuso que los recurridos consignarían mil dólares ($1,000) como fianza, y que "una vez [se] presente para inscripción en el Registro de la Propiedad el correspondiente Mandamiento", los recurridos

deberían notificar inmediatamente a los recurrentes con una copia de dicha orden. Se dispuso, además, que los recurrentes tendrían derecho a solicitar una vista, "de así estimarlo necesario". Apéndice, pág. 185.

Inconformes con la determinación del foro de instancia, el 11 de febrero de 2000 los recurrentes presentaron recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones (TCA). Alegaron que el mandamiento de embargo emitido por el TPI violó su derecho a un debido proceso de ley constitucional, ya que se ordenó a raíz de una moción *ex parte* y sin la previa celebración de una vista. Solicitaron que la orden se dejara sin efecto.([4]) Por su parte, el 4 de mayo de 2000 los recurridos presentaron una moción de desestimación en la cual alegaron que el TCA carecía de jurisdicción para entender el asunto. Apéndice, págs. 254–255.

El 25 de mayo de 2000, el TCA dictó sentencia mediante la que confirmó al foro de instancia. En su resolución, el TCA concluyó, primero, que al declarar con lugar la Solicitud de Sentencia Sumaria Parcial el 15 de octubre de 1999, el TPI resolvió que no existía controversia sobre la existencia de una obligación contractual, y que a raíz de esta obligación, los peticionarios venían obligados a satisfacer a los recurridos el 10% del valor líquido real de los terrenos adjudicados en el pleito de ejecución de hipoteca ya finalizado. Añadió, además, que los peticionarios no solicitaron reconsideración de la resolución ni recurrieron de la misma, "por lo que advino final".

Por tal razón, el TCA concluyó que la resolución del TPI

---

([4]) No obstante, un día antes de presentar la Petición de *Certiorari* ante el Tribunal de Circuito de Apelaciones (TCA), los recurrentes radicaron ante el Tribunal de Primera Instancia (TPI) una moción en la que solicitaban que se dejase sin efecto la Resolución de 15 de octubre de 1999 y, a su vez, notificaron un segundo interrogatorio a los recurridos. Apéndice, págs. 186 y 195. A esta moción se opusieron los recurridos por escrito el 14 de marzo de 2000. Apéndice, pág. 199.

El 9 de mayo de 2000, mediante resolución, el foro de instancia declaró "NO HA LUGAR a la Moción sobre Relevo de Resolución" y, sin más, ordenó la continuación de los procedimientos. Apéndice, pág. 207.

de 15 de octubre de 1999 se convirtió en un "documento fehaciente que acredita la obligación" de los recurrentes, cumpliendo así con una de las excepciones reconocidas en *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra. Por consiguiente, el TCA concluyó que el foro de instancia no erró al dictar la orden sin celebrar previamente una vista.(5)

Inconformes, los recurrentes acudieron ante nos el 25 de septiembre de 2000 mediante Petición de *certiorari* en la cual plantearon como único error lo siguiente:

> Cometió un error el Tribunal de Circuito de Apelaciones al concluir que una Resolución del Tribunal de Primera Instancia ... constituía una sentencia sumaria y que ésta era prueba fehaciente de la obligación contractual de los demandados-peticionarios de pagar honorarios de abogado a los demandantes-recurridos, y a base de ello confirmar una Orden ... [*ex parte*] de embargo en aseguramiento de sentencia.

El 13 de noviembre de 2000 emitimos una resolución mediante la cual le concedimos a la parte recurrida un término de treinta días contados a partir de la notificación de ésta para que compareciese y mostrase causa por la cual no deberíamos expedir el auto solicitado por los recurrentes y dictar sentencia revocatoria de la resolución del Tribunal de Circuito de Apelaciones de 25 de mayo de 2000. Habiendo los recurridos comparecido el 5 de diciembre de 2000, procedemos a resolver.

## II

Las Reglas de Procedimiento Civil reconocen el embargo como uno de los remedios provisionales que puede dictar un tribunal para asegurar la efectividad de una sentencia. Véanse: Reglas 56.2 a 56.4 de Procedimiento Ci-

---

(5) Esta sentencia del TCA fue notificada el 1ro de junio de 2000. El 16 de junio de 2000 los recurrentes presentaron una Moción de Reconsideración, la cual fue declarada sin lugar mediante resolución dictada el 15 de agosto de 2000, pero notificada diez días más tarde.

vil, *supra*. Este remedio provisional puede ser concedido en todo pleito civil, antes o después de dictarse la sentencia, mediante solicitud de una parte interesada.

■ Hemos establecido que, como regla general, en todo caso en que se solicite algún remedio provisional como lo es un embargo —*y antes de que el tribunal haga una determinación al respecto*— es indispensable que (*previamente*) la parte adversa sea notificada y que una vista sea celebrada. Además, los tribunales deben exigir la prestación de una fianza. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 896; Reglas 56.2 y 56.3 de Procedimiento Civil, *supra*.

■ Ahora bien, hemos reconocido, como *excepción* a esa regla, que es permisible que un tribunal expida una orden de embargo *ex parte* —esto es, sin notificación a la parte adversa y vista previa— siempre que el reclamante preste una fianza *suficiente para responder por todos los daños y perjuicios* que se puedan causar como consecuencia del aseguramiento. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 897. No obstante, la aplicación de esta excepción sólo tendrá lugar bajo tres supuestos: (1) cuando el reclamante ha alegado o demostrado tener un previo interés propietario sobre la cosa embargada; (2) cuando se han alegado o demostrado la existencia de circunstancias extraordinarias, o (3) cuando se ha alegado o demostrado la probabilidad de prevalecer mediante "prueba documental fehaciente" de la cual se desprenda que la deuda es una líquida, vencida y exigible. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, págs. 899–900. "Únicamente en estas situaciones es que un tribunal podrá posponer la celebración de dicha vista hasta *después* de trabado el embargo." (Énfasis en el original suprimido y énfasis suplido.) Íd., pág. 900.

En el caso de autos, los recurridos invocaron la segunda y tercera excepción para obtener una orden de embargo sin previa notificación o vista. Es decir, alegaron que la orden

de embargo era procedente debido a que, alegadamente, tienen probabilidad de prevalecer, y la sentencia del TPI de 15 de octubre de 1999 es "prueba documental fehaciente" de ello. Adujeron, además, que "obtuvieron información" que les causaba el temor de que los recurrentes acudirían a la Corte de Quiebras y, según ellos, ésta era la "circunstancia extraordinaria" que hacía meritoria la orden de embargo sin previa notificación o vista.

Examinemos la procedencia de estas alegaciones.

## III

En *Feliciano Figueroa et al. v. Toste Piñero*, 134 D.P.R. 909 (1993), resolvimos que una *sentencia final* dictada en un caso penal es un "documento público fehaciente" para efectos de la excepción establecida en *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra. Ello, debido a que es un documento autorizado por un funcionario público competente (*i.e.*, un juez) que tiene el deber de cumplir con las solemnidades requeridas por ley. *Feliciano Figueroa et al. v. Toste Piñero*, supra, págs. 912–913. Ahora bien, debemos resolver si la norma de este caso aplica al caso de autos. Por tanto, es necesario considerar específicamente si la resolución dictada por el TPI el 15 de octubre de 1999 debe (o puede) ser considerada como una "sentencia final".

Sabido es que una sentencia "final" es aquella que pone término a una reclamación judicial y contra la cual cabe un recurso de apelación. *U.S. Fire Ins. v. A.E.E.*, 151 D.P.R. 962 (2000); *Pueblo v. Central Cambalache*, 59 D.P.R. 60 (1941). Las Reglas 43 y 38 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establecen que una sentencia debe ser final para ser apelable o revisable.

Hemos indicado que en los casos donde hay múltiples reclamaciones, los tribunales pueden adjudicar todas las reclamaciones de una vez, al final del pleito, o pueden, a su discreción, seguir un procedimiento especial para dic-

tar sentencia parcial final y adjudicar la totalidad de una de las varias reclamaciones que una parte podría tener. *U.S. Fire Ins. Co. v. A.E.E.*, supra.

■ Las sentencias parciales no se convierten en finales *sua sponte*. Para que se conviertan en finales, el juez debe usar un lenguaje específico en su fallo; a saber, el juez debe (1) concluir que no hay razón que justifique seguir el juicio sin dictar sentencia en relación con esa parte, y (2) ordenar expresamente que se registre y archive la sentencia. *U.S. Fire Ins. Co. v. A.E.E.*, supra.

Haciendo esto, el tribunal le imparte carácter de finalidad al dictamen mediante esas conclusiones especiales y esa sentencia podrá adquirir firmeza con el transcurso del tiempo. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, San Juan, Ed. Michie de Puerto Rico, 1997, Sec. 4107, pág. 282. Si así lo hace, tendrá carácter de sentencia final, y si una parte interesa apelar tiene que hacerlo dentro de los 30 días siguientes a la notificación del archivo en autos. *Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33 (1982). De lo contrario, la "sentencia" es, en efecto, una "resolución" interlocutoria[6] que no termina el pleito, y estará sujeta a reconsideración en cualquier momento antes de dictarse la sentencia que adjudique todas las reclamaciones. Véase Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

■ Asimismo, lo dispuesto en la Regla 43.5 sobre sen-

---

[6] Hemos indicado que, para efectos de la Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, no es realmente determinante cómo un tribunal denomine sus fallos, o el lenguaje que utilice. *Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 301 (1987). Es decir, que en ausencia de la referida conclusión especial y una orden expresa de registro y archivo, cualquier orden o cualquier otra forma de decisión —*no importa cómo se denomine*— que adjudique menos del total de las reclamaciones o los derechos y obligaciones de menos del total de las partes, no terminará el pleito con respecto a ninguna de las reclamaciones o partes y la orden u otra forma de decisión estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse la sentencia que adjudique todas las reclamaciones y los derechos y obligaciones de todas las partes. *Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33, 39–40 (1982).

tencias parciales finales es aplicable sólo en una de dos situaciones, o en ambas: (1) en pleitos donde se estén planteando múltiples reclamaciones y el dictamen del tribunal adjudica menos del total de las reclamaciones, o (2) en casos comprendidos por múltiples partes y el tribunal resuelve los derechos de una de las partes. *U.S. Fire Ins. Co. v. A.E.E.*, supra. La Regla 43.5 "[n]o es aplicable, sin embargo, cuando lo que resuelve el tribunal es sólo una controversia, aunque esta sea separable de las restantes". *Camaleglo v. Dorado Wings, Inc.*, 118 D.P.R. 20, 26 (1986). Véase J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. II, pág. 703. Por *lo tanto no sería "final" un dictamen interlocutorio del tribunal que sólo resuelve una controversia en el caso, y al no ser "final", no puede ser ejecutable. Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 302 (1987).

En el caso de autos, concluimos que la "resolución" dictada por el TPI el 15 de octubre de 1999 *no adquirió carácter de "final"* por no haberse incluido en ella el lenguaje exigido por la Regla 43.5 de Procedimiento Civil, *supra.* Más aún, el dictamen interlocutorio del foro de instancia no puede considerarse "final" debido a que lo resuelto allí por el tribunal fue sólo una controversia del caso, aunque haya sido separable de las restantes. *Camaleglo v. Dorado Wings, Inc.*, supra.

Por lo tanto, dicha resolución del foro de instancia estará sujeta a reconsideración en cualquier momento antes de dictarse la sentencia que adjudique finalmente todos los planteamientos jurídicos del pleito. Hernández Colón, *op. cit.*, págs. 282–283.

Debido a que la resolución dictada por el TPI el 15 de octubre de 1999 no adquirió carácter de "final", concluimos que la norma de *Feliciano Figueroa et al. v. Toste Piñero*, supra, no puede ser aplicable al caso de autos. En consecuencia, forzoso es concluir que la resolución dictada por el foro de instancia *no* es un "documento público fehaciente"

para efectos de la excepción establecida en *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra.

■ Ahora bien, en *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 900, indicamos además que, como excepción, un tribunal podrá celebrar una vista de embargo *ex parte únicamente* cuando de "prueba documental fehaciente" surja que la deuda reclamada es una *"líquida, vencida y exigible"*. (Énfasis suplido.) Por lo tanto, aún bajo el supuesto de que la resolución del TPI constituye "prueba documental fehaciente", debemos concluir que la vista de embargo *ex parte* celebrada no fue legal ya que la deuda reclamada por los recurridos no es líquida, vencida y exigible. Una deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". Véase M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168; *Freeman v. Tribunal Superior*, 92 D.P.R. 1, 25 (1965).

En el caso de autos, resulta obvio que la deuda alegada por los recurridos no es cierta ni determinada. Lo que se dispuso en la carta-contrato fue que los recurridos recibirían el 10% del valor líquido real de los bienes que se adjudicaron a los recurrentes. Los propios recurridos han insistido que se nombre un tasador cuanto antes, *precisamente* para que *se haga una determinación del valor líquido real* de los terrenos en cuestión. No se sabe en este momento el monto de los honorarios adeudados, mientras no se sepa el valor tasado de los bienes adjudicados a los recurrentes. Así, pues, resulta evidente que la deuda alegada por los recurridos aún no es líquida. En consecuencia, no procedía la concesión del remedio *ex parte* y sin vista previa. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 900.

Por último, los recurridos alegaron que "obtuvieron información" que les causaba "temor" de que los recurrentes acudirían a la Corte de Quiebras. Claramente, los recurridos intentan valerse de esa aseveración para persuadirnos

de que están presentes las "circunstancias extraordinarias" que justifican una orden de embargo *ex parte*. Sin embargo, del expediente no surge tan siquiera alguna declaración jurada que sustente el alegado "temor" de los recurridos.

 Debemos aclarar que si bien es cierto que en *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, indicamos que la existencia de "circunstancias extraordinarias" puede justificar una orden de embargo *ex parte*, ello no significa que un tribunal puede concluir, sin más, que existen "circunstancias extraordinarias" sólo porque una parte lo afirma. El mero acto de aseverarlo no puede ser suficiente justificación para que a una parte se le niegue un derecho de rango constitucional y que se le embargue una propiedad *ex parte*, máxime cuando la alegación está desprovista de evidencia prima facie alguna, o —por lo menos— de alguna declaración jurada. Ciertamente, la Constitución exige del embargante una alegación de "circunstancias extraordinarias" más fundamentada y razonable.([7])

Por lo tanto, concluimos que el acto del TPI de autorizar un "Mandamiento" de embargo el 18 de enero de 2000 sin la previa notificación a la parte recurrente y la celebración de una vista adversativa fue ilegal. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra.([8]) Forzoso es, pues, concluir

---

([7]) Somos conscientes de que la celebración de una vista previa impone al litigante interesado en el embargo un costo de tiempo y esfuerzo. Sabemos también que sería más eficiente, quizás, no tener que celebrar una vista. Sin embargo, el interés en la eficiencia y economía de tiempo no pueden, en balance, prevalecer sobre el derecho constitucional al debido proceso de ley. El debido proceso de ley constitucional no pretende promover los valores de eficacia ni pretende proteger todos los valores humanamente deseables o concebibles: pretende proteger los intereses propietarios de las personas contra quienes se solicita embargar. Véase *Fuentes v. Shevin*, 407 U.S. 67, 90–91 esc. 22 (1972).

([8]) Debemos añadir, además, que el embargo *ex parte* ordenado por el TPI afectó a un total de *ocho (8) fincas* propiedad de los recurrentes. Éstas constan, respectivamente, de ochenta y una (81) cuerdas; doscientas veinte y siete (227) cuerdas; noventa y tres (93) cuerdas; treinta (30) cuerdas; cuatro (4) cuerdas; diecinueve (19) cuerdas; cinco (5) cuerdas, y ciento noventa (190) cuerdas. Apéndice, págs. 11–15. A nuestro modo de ver, es altamente cuestionable si la fianza de mil dólares ($1,000) consignada judicialmente por los recurridos y aceptada por el tribunal de instancia

que erró el Tribunal de Circuito de Apelaciones al confirmar al foro de instancia.

*Se revoca la sentencia del Tribunal de Circuito de Apelaciones y se deja sin efecto el mandamiento de embargo del foro de instancia de 18 de enero de 2000. Se devuelve el caso al Tribunal de Primera Instancia para que proceda según lo aquí dispuesto.*

El Juez Asociado Señor Hernández Denton no intervino.

---

tan apresuradamente pueda ser considerada como "fianza suficiente" para responder "por todos los daños y perjuicios que se puedan causar como consecuencia del aseguramiento". *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* supra, pág. 897.