EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rio Mar Community Association, Inc.<br><br>Recurrida<br><br>v.<br><br>Jaime Mayol Bianchi<br><br>Peticionario | 2021 TSPR 138<br><br>208 DPR ____ |

Número del Caso: AC-2019-144

Fecha: 24 de septiembre de 2021

Abogados de la parte peticionaria:

    Lcdo. Omar Saadé Yordán
    Lcda. María I. Soler Agostini

Abogados de la parte recurrida:

    Lcdo. Pedro Rosario Urdaz
    Lcdo. Arturo Negrón Vargas

Materia: Derecho Procesal Civil: El procedimiento sumario sobre cobro de dinero instado al amparo de la Regla 60 de Procedimiento Civil se puede convertir en ordinario si, como parte de las defensas afirmativas formuladas, la parte demandada impugna la liquidez y exigibilidad de la deuda reclamada.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Río Mar Community Association, Inc.

       Recurrida

         v.

Jaime Mayol Bianchi

       Peticionario

AC-2019-144

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 24 de septiembre de 2021.

En esta ocasión dilucidamos si procede convertir un procedimiento sumario sobre cobro de dinero a uno ordinario al amparo de la Regla 60 de Procedimiento Civil.[1] Ello como consecuencia de las defensas afirmativas claras y sustanciales levantadas por la parte demandada dirigidas a impugnar la liquidez de la deuda reclamada por concepto de cuotas de mantenimiento. Por los fundamentos que expondremos, respondemos en la afirmativa, aunque tales defensas afirmativas coincidan con las alegaciones presentadas en la reconvención desestimada que impugnaba el cálculo de esas cuotas.

---

[1] 32 LPRA Ap. V., R. 60.

I.

La asociación de residentes Río Mar Community Association, Inc. (RMCA) presentó una demanda sobre cobro de dinero al amparo de la Regla 60 en contra del Sr. Jaime Mayol Bianchi (señor Mayol Bianchi o peticionario) dueño del apartamento 8B en el proyecto Rio Mar Condominium II ubicado en el complejo residencial y turístico Río Mar Resort en Río Grande. En ésta RMCA alegó que el peticionario adeudaba $4,995.92 por concepto de cuotas de mantenimiento vencidas; suma que continuaba aumentando a razón de $115.62 mensuales, más intereses y penalidades. Además del pago de la deuda, solicitó las costas, gastos y honorarios de abogado.

El señor Mayol Bianchi contestó la demanda y reconvino.[2] En cuanto a la alegación responsiva y las defensas afirmativas formuladas adujo, en lo que nos es pertinente, que desde 1993 RMCA ha calculado las cuotas de mantenimiento en contravención con las condiciones restrictivas, que tal proceder ha resultado en la sobrefacturación a todos los titulares y, para efectos de la causa de acción, la deuda no era líquida ni exigible. Por lo tanto, aseguró que RMCA debía volver a computar desde 1993 todas las cuotas de mantenimiento cobradas para reembolsar a los titulares el dinero pagado en exceso.

Por otro lado, a través de la reconvención, el peticionario reiteró que RMCA estaba actuando en contravención con las condiciones restrictivas de la Escritura Núm. 2 intitulada "Declaration of Protective Convenants", autorizada

---

[2] *Apéndice de la Apelación*, en las págs. 411-414.

por la notaria, Lcda. Laura T. Rozas, el 13 de abril de 1994. Además, el señor Mayol Bianchi argumentó que, contrario a los titulares que poseen un 49% de participación en RMCA, ésta ha permitido que el desarrollador -quien posee el 51% de participación- pague una cuota menor de la debida. Según aseveró el peticionario, esto impone una carga mayor a los titulares en la medida que RMCA no ha computado las cuotas y las derramas conforme al presupuesto que se supone que anualmente la asociación apruebe y, una vez aprobado, éstas se dividan entre todos los titulares mediante el sistema de unidades básicas de viviendas o "Basic Dwelling Units". Con estas alegaciones el peticionario insistió que RMCA tenía que volver a computar las cuotas cobradas en exceso y reembolsarlas. Asimismo, exigió una orden para que RMCA recaudara las cantidades dejadas de cobrar al desarrollador. El mismo día que presentó su contestación a la demanda y reconvención el peticionario tramitó un *Interrogatorio y solicitud de producción de documentos*. En vista de esto, RMCA peticionó la conversión del pleito a civil ordinario "para realizar un descubrimiento de prueba más exhaustivo".[3] Así, conforme a lo dispuesto en la Regla 60, el foro primario convirtió el pleito al procedimiento civil ordinario.

Ahora bien, posteriormente RMCA presentó una moción de desestimación en contra de la reconvención presentada por el peticionario Mayol Bianchi, fundamentada en que la jurisdicción para atender lo alegado en ésta correspondía al Departamento

---

[3] *Apéndice*, pág. 317.

de Asuntos del Consumidor (DACO). Además, solicitó la paralización del procedimiento hasta tanto el foro de instancia resolviera la moción dispositiva y que, de ser concedida, se revirtiera el litigio al trámite de la Regla 60. Por su parte, el señor Mayol Bianchi se opuso y argumentó que, si el tribunal de instancia conservaba la jurisdicción sobre la demanda de cobro de dinero, debía también retener la jurisdicción sobre la reconvención. Además, adujo que formuló defensas afirmativas respecto a la liquidez de la deuda, la consecuente obligación de volver a computar las cuotas de mantenimiento impuestas, más el reembolso de las cantidades cobradas en exceso a los titulares.

Luego de otros trámites que son innecesarios pormenorizar, el tribunal de instancia notificó dos dictámenes. Por un lado, emitió una *Sentencia parcial* en la que desestimó la reconvención, fundamentada en que el foro con jurisdicción para atender la disputa sobre la fórmula para el cómputo de las cuotas de mantenimiento era el DACO y, por el otro, emitió una *Resolución* en la que determinó que el tribunal de instancia tenía jurisdicción sobre la causa de acción por cobro de dinero.

Inconforme, el señor Mayol Bianchi acudió ante el Tribunal de Apelaciones. Sin embargo, éste confirmó ambos dictámenes mediante una sentencia en *Rio Mar Community Association, Inc. v. Jaime Mayol Bianchi y otros*, Caso Núm. KLAN201601115 *(Sentencia KLAN201601115)*. Una vez devuelto el caso al foro primario, el peticionario reiteró el incumplimiento de RMCA de contestar el descubrimiento de

prueba. En oposición, RMCA alegó que el peticionario pretendía descubrir prueba pertinente a la reconvención desestimada, que ésta advino final y firme y, por esto, solicitó la reconversión del pleito al trámite sumario. Por su parte, el señor Mayol Bianchi expuso que la conversión del procedimiento era improcedente, porque el descubrimiento de prueba se relacionaba con las defensas afirmativas formuladas. Por otro lado, RMCA replicó argumentando, en síntesis, que había entregado toda la prueba solicitada en relación con la causa de acción de cobro de dinero y que la desestimación de la reconvención hacía impertinente descubrir cualquier otra prueba. Luego de escuchadas las partes, el foro primario ordenó la culminación del descubrimiento de prueba.

Debido a que RMCA incumplió la orden, el señor Mayol Bianchi solicitó la paralización de los procedimientos. Sin embargo, esta vez, el foro de instancia declaró con lugar las objeciones de RMCA para no descubrir prueba y esgrimió que permitirlo constituiría un ataque colateral a la *Sentencia KLAN201601115* del foro apelativo intermedio.[4] Por último, revirtió el litigio al procedimiento sumario. Al peticionar la reconsideración de tal determinación, el señor Mayol Bianchi argumentó, entre otras cosas, la necesidad de obtener información relacionada específicamente con la mencionada Escritura Núm. 2 y la certeza del cómputo que RCMA había realizado para cobrar las cuotas. Sin embargo, el foro primario sostuvo su determinación. Inconforme, el señor Mayol Bianchi

---

[4] *Apéndice*, págs. 346-347.

recurrió al Tribunal de Apelaciones en *Certiorari*, pero éste denegó expedir el recurso por entender que no estaba ante una situación excepcional donde esperar hasta la apelación constituyera una grave injusticia.

Devuelto el caso al foro de instancia y concluido el juicio, el tribunal emitió una *Sentencia* a favor de RMCA y condenó al señor Mayol Bianchi al pago de $9,537.03 por concepto de las cuotas adeudadas y gastos del litigio, más le impuso $1,000 por temeridad. Nuevamente en desacuerdo, el señor Mayol Bianchi acudió esta vez en apelación ante el foro apelativo intermedio. En esencia, señaló que el foro sentenciador cometió el error de (1) prejuzgar como correctas las cantidades reclamadas sin atender las defensas afirmativas formuladas; (2) al eximir a RMCA de contestar el descubrimiento de prueba; y, por último, (3) al revertir el caso al procedimiento sumario.

Sin embargo, el foro apelativo intermedio confirmó la *Sentencia* apelada. En lo pertinente, el Tribunal de Apelaciones precisó aclarar que el caso se trataba de una demanda de cobro de dinero y no de una impugnación de las cuotas de mantenimiento. Así, esgrimió que la prueba demostró un atraso en el pago de las cuotas, lo que establecía que la deuda estaba vencida, líquida y exigible.[5] Finalmente, el Tribunal de Apelaciones recalcó como fundamento para su sentencia el

---

[5] Además, el Tribunal de Apelaciones entendió innecesario considerar las cuantías impuestas por RMCA en cuotas de mantenimiento porque otro panel del foro apelativo intermedio consignó que el DACO es el foro con jurisdicción para atender esa controversia, por lo que la *Sentencia* KLAN201601115 constituía la ley del caso. Véase *Apéndice*, págs. 22-23.

propósito de la Regla 60 para concluir que el tribunal de instancia actuó correctamente al no permitir el descubrimiento de prueba.

Inconforme, el peticionario acudió ante este Tribunal mediante un recurso de *Apelación* y señaló, en lo que nos atañe, que el foro apelativo intermedio había errado al eximir a RMCA de contestar el descubrimiento de prueba cursado por el peticionario y confirmar la sentencia del foro de instancia violentando así su derecho a un debido proceso de ley.

Luego de acoger el recurso de *Apelación* y que las partes presentaran los alegatos correspondientes, nos encontramos listos para resolver.

II

A. Regla 60 de Procedimiento Civil.

La Regla 60 de Procedimiento Civil (Regla 60) establece un procedimiento sumario de cobro de dinero donde las reglas de procedimiento civil para trámites ordinarios aplicarán de manera supletoria, siempre y cuando sean compatibles con el mecanismo sumario establecido en la regla.[6] Por esto, "el emplazamiento por edicto, la contestación a la demanda, el descubrimiento de prueba, **las reconvenciones**, la demanda contra terceros, entre otros, son preceptos incompatibles con esta herramienta sumaria".[7]

No obstante, la propia Regla 60 establece varias instancias en las que se puede convertir una causa de acción

---

[6] Cooperativa v. Hernández Hernández, 2020 TSPR 127, en la pág. 2 (citando *Asoc. Res. Colinas Metro,* 156 DPR en la pág. 98).

[7] *Íd.*, pág. 3 (citando *Asoc. Res. Colinas Metro,* 156 DPR en las págs. 99-100)(Énfasis suplido).

presentada bajo esta regla, en un procedimiento ordinario, entre las cuales se encuentra: "(1) si la parte demandada demuestra que tiene una reclamación sustancial; (2) cuando, en el interés de la justicia, las partes ejercen su derecho de solicitar que el pleito se continúe ventilando por el trámite civil ordinario; (3) partiendo de ese mismo interés, el tribunal *motu proprio* tiene la discreción para así ordenarlo; […]".[8]

Por otro lado, ya antes hemos dicho que únicamente se pueden reclamar por vía judicial las deudas vencidas, líquidas y exigibles.[9] Respecto a los últimos dos conceptos hemos expresado que:

> El vocablo 'líquida' en relación con una cuenta, en lenguaje corriente significa el saldo 'o residuo de cuantía cierta que resulta de la comparación del cargo con la data'. Y la voz 'exigible' refiriéndose a una obligación, significa que puede demandarse su cumplimiento.[10]

La deuda es líquida por ser cierta y determinada[11] y es exigible porque puede demandarse su cumplimiento.[12] Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía **ha sido aceptado como correcto por el deudor y que está vencido**".[13]

---

[8] *Cooperativa*, 2020 TSPR 127, en la pág. 8.

[9] Ramos y otros v. Colón y otros, 153 DPR 534, 546 (2001).

[10] Guadalupe v. Rodríguez, 70 DPR 958, 966 (1950).

[11] *Ramos y otros*, 153 DPR en la pág. 546 (citando M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 16; Freeman v. Tribunal Superior, 92 DPR 1, 25 (1965)).

[12] *Guadalupe*, 70 DPR en la pág. 966.

[13] *Íd.* (Énfasis suplido).

En el ámbito procesal, el hecho de que la deuda sea líquida y exigible en una demanda de cobro de dinero atendida conforme a la Regla 60 es un elemento que, además de la notificación-citación, debe ser superada por la parte promovente para que el tribunal pueda atender todas las cuestiones litigiosas y dictar sentencia inmediatamente.[14] Sobre ese particular, el Prof. Rafael Hernández Colón comentó que la reclamación sustancial que pueda tener el demandado que requiera la conversión del procedimiento puede ser "porque el derecho de cobro no surge claro, se necesita hacer descubrimiento de prueba, se tiene una reconvención compulsoria o se necesita añadir un tercero demandado, entre otras cosas".[15]

B. Defensas afirmativas

La Regla 6.3 de Procedimiento Civil,[16] establece una lista *no taxativa* de defensas que una parte deberá expresar afirmativamente al momento de responder una alegación.[17] De acuerdo con el tratadista Hernández Colón, las defensas afirmativas son "las que presentan planteamientos sustentados por cuestiones de hecho o de derecho que no consisten en

---

[14] *Cooperativa*, 2020 TSPR 127, en la pág. 6 (citando *Asoc. Res. Colinas Metro*, 156 DPR en la pág. 100).

[15] R. Hernández Colón, *Práctica Jurídica de Puerto Rico. Derecho Procesal Civil*, 6ta ed., San Juan, LEXISNEXIS PUERTO RICO, 2017, sec. 2404, pág. 629.

[16] 32 LPRA Ap. V, R. 6.3.

[17] La Regla 6.3 de Procedimiento Civil enumera las defensas afirmativas siguientes: (a) transacción; (b) aceptación como finiquito; (c) laudo y adjudicación; (d) asunción de riesgo; (e) negligencia; (f) exoneración por quiebra; (g) coacción; (h) impedimento; (i) falta de causa; (j) fraude; (k) ilegalidad; (l) falta de diligencia; (m) autorización; (n) pago; (o) exoneración; (p) cosa juzgada; (q) prescripción adquisitiva o extintiva; (r) renuncia y cualquier otra materia constitutiva de excusa o de defensa afirmativa. Por este último inciso, es indudable de que las defensas afirmativas son *numerus apertus*. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., JTS, 2011, T. II, pág. 405.

negaciones de los hechos alegados en la reclamación contra la cual se formulan[…][y que], de ser ciertos, derrotan el reclamo del demandante, incluso si todas las alegaciones del demandante fueran aceptadas como correctas".[18] Comprenden "materia de naturaleza sustantiva y/o materia constitutiva de excusa, por la cual la parte demandada no debe responder a las reclamaciones en su contra".[19] Las defensas afirmativas "solo tiene[n] un propósito defensivo, entiéndase, impedir que el reclamo [en contra de la parte demandada] prospere".[20]

Conforme a las exigencias de la Regla 6.3, las defensas "deberán plantearse en forma clara, expresa y específica al responder a una alegación o se tendrán por renunciadas, salvo la parte advenga en conocimiento de la existencia de la misma durante el descubrimiento de prueba, en cuyo caso deberá hacer la enmienda a la alegación pertinente".[21] Es decir, las defensas afirmativas sin suficiente especificidad, incoando las mismas de manera general y sin fundamentos, tiene el efecto de una renuncia, lo cual impide que puedan formularse posteriormente o sustituirse por una defensa similar.[22]

Finalmente, coincidimos plenamente con el profesor Hernández Colón de que las defensas no constituyen

---

[18] *Hernández Colón*, *supra* nota 15, págs. 289-290.

[19] Presidential v. Transcaribe, 186 DPR 263, 280 (2012).

[20] Bacardí Corp. v. Torres Arroyo, 202 DPR 1014, 1023 (2019).

[21] *Presidential,* 186 DPR en la pág. 280.

[22] *Íd.,* en las págs. 284-286.

contrarreclamaciones y que su fin es meramente derrotar la reclamación contra la cual se formulan.[23]

C. Las alegaciones como defensas afirmativas en contraste con su uso en una reconvención.

Recientemente, en Bacardí Corporation v. Torres Arroyo, en el contexto de un pleito sumario laboral al amparo de la Ley Núm. 2 la cual no permite la reconvención de un patrono, implicamos que una parte puede utilizar las mismas alegaciones con un propósito defensivo o de forma ofensiva.[24]

Y es que, como expusimos, la parte que presenta una alegación como defensa afirmativa, solo busca eso, defenderse para derrotar la reclamación presentada en su contra. Así, el resultado, de tener éxito, es solo uno: lograr librarse de la responsabilidad que se le atribuye o se alega en su contra. En cambio, cuando una parte presenta la misma alegación como parte de una reconvención o en una demanda en un pleito independiente, está buscando que su causa de acción prevalezca, haciendo responsable a la parte demandada o contra quien ha reconvencionado, y buscando a su vez algún remedio a su favor. Es claro entonces que, en este contexto, una misma alegación puede presentarse con fines o propósitos distintos con el interés de producir un resultado diferente en cada una de sus manifestaciones. De hecho, la Regla 6.3 deja ver que lo importante no es siquiera la manera en que la parte denomine la alegación, sino el propósito de ésta. Así, el texto de la regla establece que "[c]uando la parte denomine equivocadamente

---

[23] *Hernández Colón*, *supra* nota 15, pág. 290.

[24] *Bacardí Corporation*, 202 DPR en la pág. 1023.

una defensa como una reconvención, o una reconvención como una defensa, el tribunal, cuando así lo requiera la justicia y bajo los términos que estime apropiados, considerará la alegación como si se hubiese denominado correctamente".[25]

D. Descubrimiento de Prueba en el contexto del debido proceso

En general, el debido proceso de ley se refiere al derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley. En nuestro ordenamiento, este principio se recoge en la Sec. 7 del Art. II de la Constitución de Puerto Rico y en la Quinta y Decimocuarta Enmienda de la Constitución de Estados Unidos.[26] Los mecanismos de descubrimiento de prueba en nuestro sistema adversativo responden a esta garantía constitucional y, como tal, deben estar disponibles en todo pleito que pueda privar a una persona de su propiedad o libertad. Así, el propósito del descubrimiento de prueba es garantizarles a las partes litigantes el que tengan la oportunidad de estar adecuadamente preparadas en el momento que el caso se vea en sus méritos.[27] Además, un efectivo descubrimiento de prueba evita los inconvenientes, sorpresas e injusticias que surgen cuando las partes en un litigio ignoran los hechos que están en controversia.[28]

---

[25] 32 LPRA Ap. V., R.6.3.

[26] CONST. PR art. II, § 7 (2016); CONST. EE. UU. enm. V y XIV.

[27] Lluch v. España Service Sta., 117 DPR 729 (1986).

[28] Alfonso Brú v. Trane Export, Inc., 155 DPR 158, 167 (2001).

Por otro lado, en el pasado hemos resuelto que limitar innecesariamente el acceso al descubrimiento de prueba puede dar lugar a que se transgreda el debido proceso de ley.[29] Esto, porque las reglas que rigen el descubrimiento de prueba "se basan en el concepto básico de que antes del juicio toda parte en la litigación tiene el derecho a obtener el descubrimiento de toda la información que esté en posesión de cualquier persona".[30] Por último, en el pasado adoptamos la tendencia surgida en el ámbito del procedimiento civil de "facilitar el descubrimiento de prueba de forma tal que se coloque al juzgador en la mejor posición posible para resolver justamente".[31]

## III

El argumento central del peticionario es que se violentó su derecho a un debido proceso de ley cuando el Tribunal de Primera Instancia revirtió el litigio al mecanismo sumario de la Regla 60 sin considerar las defensas afirmativas que éste formuló y al no permitir el descubrimiento de prueba que solicitó. Tiene razón. De hecho, en este caso el Tribunal de Primera Instancia tuvo ante sí todos los escenarios por los cuales el litigio no debía tramitarse al amparo de la Regla 60. Veamos.

Surge con claridad que existía una reclamación sustancial del señor Mayol Bianchi, a saber: que la causa de

---

[29] Ramírez v. Policía de P.R., 158 DPR 320 (2002); Ríos v. F.S.E, 139 DPR 167 (1995).

[30] *Cuevas Segarra*, *supra* nota 17, pág. 835.

[31] E.L.A. v. Casta, 162 DPR 1, 9 (2004); Ward v. Tribunal Superior, 101 DPR 865, 867 (1974).

acción no cumplía con los elementos de liquidez y exigibilidad de la deuda para adjudicar la demanda de cobro de dinero de RMCA. Esa defensa afirmativa se formuló de manera clara, expresa y específica y tuvo un propósito defensivo, entiéndase, impedir que el cobro pretendido por RMCA prosperara. El expediente revela que el peticionario no negó el hecho de la existencia de la deuda reclamada, solo que, como deudor, éste nunca aceptó como correcta la cuantía que RMCA pretende cobrar. El señor Mayol Bianchi es acreedor del derecho a descubrir prueba conducente a conocer si la cantidad adeudada es cierta y determinada para que RMCA pueda exigir su cumplimiento y, de este modo, se considere vencida.

Ciertamente, desde inicio del pleito el señor Mayol Bianchi planteó la iliquidez y la carencia de exigibilidad de la deuda de forma ofensiva. Es decir, la reconvención presentada por éste procuraba exigir que RMCA cumpliera con las condiciones restrictivas consignadas en la servidumbre de equidad y requería, además, que el desarrollador pagase por las cuotas conforme al porcentaje correspondiente. Aunque esa reconvención se desestimó por falta de jurisdicción, las defensas que formuló el señor Mayol Bianchi en su contestación a la demanda subsistieron. Entre otras razones, porque el tribunal nunca adjudicó la procedencia de las cuotas ni si se estaban cobrando correctamente. Por lo tanto, fue un error de los foros *a quo* interpretar que la intención del peticionario de descubrir información relacionada específicamente con la Escritura Núm. 2 y de la certeza del cómputo que RCMA había realizado para cobrar las cuotas era un intento de revivir la

reconvención que había sido desestimada de manera final y firme. Es claro que los foros *a quo* violentaron el derecho del peticionario a defenderse al impedir que éste descubriera la prueba solicitada. Como mencionáramos, la reconvención se desestimó por falta de jurisdicción sobre la materia, por lo que el foro primario no atendió los méritos de la alegación del peticionario.[32] En ese contexto, el tribunal de instancia no tenía impedimento alguno para atender el planteamiento de la iliquidez y la inexigibilidad de la deuda que se presentó claramente como defensa afirmativa y debió mantener el procedimiento como uno ordinario para permitir un descubrimiento de prueba justo en tales circunstancias.

IV

Por los fundamentos antes expuestos, se revocan las Sentencias de los foros *a quo* y se devuelve el caso al Tribunal de Primera Instancia para que los procedimientos continúen de manera compatible con lo aquí resuelto.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[32] Cuevas Segarra, *supra* nota 17, pág. 410. Por otro lado, el análisis en esta Opinión no considera la corrección o no de la *Sentencia parcial* que desestimó la reconvención por falta de jurisdicción sobre la materia para atender el reclamo del peticionario en contra de la asociación de residentes.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Río Mar Community Association,
Inc.

       Recurrida

          v.

Jaime Mayol Bianchi

       Peticionario

AC-2019-144

SENTENCIA

En San Juan, Puerto Rico, a 24 de septiembre de 2021.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revocan las Sentencias de los foros *a quo* y se devuelve el caso al Tribunal de Primera Instancia para que los procedimientos continúen de manera compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo