*745 TEXTO COMPLETO DE LA SENTENCIA
Sea Beach Island, Inc. (en adelante Sea Beach) presentó ante nos un escrito de Certiorari el 27 de abril de 2009. Mediante el mismo nos solicita que revoquemos la Resolución emitida el 27 de marzo de 2009 por el Tribunal de Primera Instancia, Sala de Aguadilla (en adelante TPI). Dicha Resolución da por extinguida la obligación de la parte demandada, Costa de Marfil Inc. (en adelante Costa de Marfil), de vender a Sea Beach el inmueble objeto de la controversia y, además, da por desistida, con perjuicio, toda reclamación que tenga instada Sea Beach contra Costa de Marfil en este caso.
Luego de ponderar minuciosamente las controversias envueltas, así como los hechos y el derecho aplicable y de examinar el caso en sus méritos, decidimos expedir el auto solicitado y confirmar la resolución recurrida.
I
El 2 de agosto de 1999, Costa de Marfil suscribió un contrato de opción de compra con Víctor Soto Concepción (en adelante señor Soto Concepción) y Miriam Valera Concepción (en adelante señora Valera Concepción) respecto a dos (2) parcelas sitas en el Barrio Espinal del Municipio de Aguada. El 13 de septiembre de 2003, el señor Soto Concepción y la señora Valera Concepción convinieron, mediante contrato privado, una cesión de contrato de opción de compra con Sea Beach. Así las cosas, para el 14 de mayo de 2004, el señor Soto Concepción y la señora Valera Concepción presentaron un recurso de entredicho provisional ante el TPI, ya que Costa de Marfil les cursó una carta en la que les informaba que rescindía el contrato debido a que no se habían pagado los intereses pactados. El 30 de septiembre de 2004, el TPI emitió una resolución en la que ordenó que hasta que no se dispusiera lo contrario, Costa de Marfil no podía ceder, vender, permutar, traspasar o enajenar de forma alguna la propiedad objeto del litigio.
Luego de algunos trámites procesales interlocutorios, el 10 de mayo de 2005, las partes sometieron ante la consideración del TPI un nuevo contrato. Mediante dicho contrato, suscrito el 28 de abril de 2005, las partes acordaron que el precio de venta sería dos millones trescientos mil dólares ($2,300,000) de los cuales ya se había abonado la cantidad de cien mil dólares ($100,000). Acordaron que el restante sería pagado en o antes del momento de otorgarse la escritura de compraventa que tenía como término hasta el 30 de junio de 2005. [1] Además, las partes convinieron, en la cláusula novena del contrato, que Costa de Marfil segregaría una cuerda de terreno para vendérsela a José Medina Muñiz, uno de los accionistas de dicha corporación, y el remanente sería la propiedad objeto de la compraventa. Este nuevo contrato dejó sin efecto el suscrito el 2 de agosto de 1999. Ante este acuerdo, el TPI emitió Sentencia en la que aprobó la Moción Informativa sometida por las partes y ordenó el archivo del caso sin perjuicio.
Así las cosas, el 2 de diciembre de 2005, Sea Beach presentó una demanda sobre sentencia declaratoria en contra de Costa de Marfil. En la misma, sostuvo que las partes habían tratado de otorgar las escrituras de compraventa, pero existía un desacuerdo en cuanto a la segregación pactada. En específico, el desacuerdo giraba en tomo a la cabida y configuración del terreno según había sido segregado.
El 16 de marzo de 2006, las partes presentaron escrito intitulado Estipulación. Mediante el mismo, informaron sobre el acuerdo al que habían llegado en cuanto a la cabida y configuración del terreno que iba a ser segregado. Dicho acuerdo fue recogido en la cláusula 12, la cual establece lo siguiente:
*746 Para poder otorgar las escrituras de compraventa, las partes han llegado al siguiente acuerdo en cuanto a la cláusula novena de dicho contrato que reza: “Se segregará una cuerda que colinda con terrenos pertenecientes a Don José Medina Muñiz, la cual será vendida por la Corporación Costa Marfil, Inc. a Don José Medina Ruiz. El remanente luego de segregada dicha cuerda será la propiedad objeto de la compraventa.” Dicha cuerda se delimitará de la siguiente forma. Desde los 600 metros que le pertenecen al Sr. José Medina tendrá un frente de playa de 72 metros y de fondo 84 metros promedio, dicha distancia será hasta el camino. En un área menos de los 84 metros y en otras áreas será más va depender la configuración del camino. Quedando su configuración con una cabida de 6040 metros. Por ese exceso en la cuerda, la parte demandante no recibirá compensación económica alguna y la parte demandada acepta que su frente de playa sea de 72 metros. El precio de compraventa es el estipulado en el contrato de opción del 28 de abril de 2005. Véase el Apéndice del Recurso, a la página 5.
El 27 de marzo de 2006, el TPI emitió una Sentencia por Transacción en la que aprobó la estipulación sometida por las partes, la cual se hizo formar parte del dictamen.
Así las cosas, el 25 de mayo de 2006, la Administración de Reglamentos y Permisos (en adelante ARPE) emitió una resolución aprobando la segregación. Entonces, el 12 de junio, Costa de Marfil envió una carta a Sea Beach en la que le concedió hasta el 22 de junio de 2006 para otorgar la escritura de compraventa. A raíz de esto, Sea Beach le cursó una misiva reiterando su intención de ejercitar su derecho a la opción.
El 23 de junio de 2006, Costa de Marfil presentó ante el TPI una moción en la que indicó que había vencido el término concedido a Sea Beach para que ejercitara la opción, sin ello haber ocurrido, por lo que daba por terminado y cancelado el contrato. El 26 de junio de 2006, Sea Beach presentó una Moción de Remedio Urgente en la cual solicitó que se le ordenara a Costa de Marfil no vender la propiedad a un tercero y a que cumpliera con el acuerdo de transacción al que habían llegado.
Transcurridos varios trámites procesales interlocutorios, el 15 de noviembre de 2006, notificada el 27 de noviembre de 2006, el TPI emitió una Resolución y Orden en la que señaló que en este caso sólo había quedado en suspenso el otorgamiento de la escritura de compraventa y que no habiendo un acuerdo en cuanto al término para otorgar dicha escritura, le correspondía al tribunal fijar dicho plazo. En consecuencia, dispuso que Costa de Marfil tendría un término de sesenta (60) días para otorgar las escrituras y documentos necesarios. Una vez se acreditara a Sea Beach el cumplimiento cabal con los trámites previos, ésta tendría un término improrrogable de treinta (30) días para otorgar los documentos de compraventa o consignar en el tribunal el monto total del precio de compra. También dispuso que si Sea Beach no tenía el dinero para hacer el pago, ésta habría incumplido el contrato de compraventa y sus obligaciones.
Inconforme, el 27 de diciembre de 2006, Costa de Marfil presentó un recurso de Certiorari ante este foro (KLCE-2006-01751). En esencia, señaló como error la determinación del TPI de que el contrato de opción había quedado ejercitado. El 28 de febrero de 2007, otro panel de este tribunal emitió una Resolución en la cual denegó la expedición del Certiorari. En dicha Resolución se dispuso que primordialmente lo que estaba haciendo Costa de Marfil era atacar la sentencia por transacción que ya era final y firme y, por ende, inapelable. Además, se indicó que el caso se encontraba en una etapa de ejecución en la que el TPI ya había emitido una resolución donde fijaba el término en el que las partes debían otorgar la escritura. Asimismo, se concluyó que la determinación del TPI era esencialmente correcta. Inconforme con la determinación, Costa de Marfil acudió al Tribunal Supremo quien denegó, el 27 de abril de 2007, la expedición del auto solicitado.
Luego de los trámites apelativos, el 15 de mayo de 2007, Costa de Marfil le solicitó al TPI que tomara conocimiento de que completó los trámites de mesura, segregación, venta, agrupación y eliminación de gravamen, y que de conformidad con el Proyecto de Segregación y Compraventa presentado por Sea Beach, la segregación de la cuerda de terreno que fue objeto de controversia se haría en conjunto con la escritura de compraventa. Además, solicitó que como consecuencia se aplicara el término de treinta (30) días improrrogables para que Sea *747 Beach otorgara o consignara en el Tribunal el monto total del precio de compraventa.
El 11 de junio de 2007, Sea Beach presentó una Moción Informativa en la que indicó que Costa de Marfil aún no había culminado con las gestiones en el Registro y que por esta razón la institución bancaria no les había otorgado el préstamo que habían requerido. Solicitó al TPI que le ordenara a Costa de Marfil efectuar los trámites adecuados y a entregar un título limpio, ya que sin ello no se podría otorgar la escritura del préstamo hipotecario. Incluyó, con la moción, la carta del banco y los estudios de título que señalaban los defectos en las propiedades. El 13 de junio de 2007, el tribunal dictó resolución en la cual apercibió a las partes a que cumplieran con sus obligaciones dentro de los términos concedidos. El 14 de junio de 2007, Sea Beach presentó otra Moción Informativa en la cual le señaló al foro de instancia que partiendo de la aseveración de Costa de Marfil de que todo se había cumplido a cabalídad y que no habría ningún problema en el Registro de la Propiedad, consignaría el dinero. Ese mismo día, mediante una Moción de Consignación, Sea Beach consignó tres cheques que en total suman dos millones doscientos mil dólares ($2,200,000).
El 22 de junio de 2007, el tribunal emitió una Resolución ordenando a las partes reunirse a fines de evaluar los defectos regístrales. Luego de varios trámites interlocutorios y desavenencias, el 5 de diciembre de 2007, las partes presentaron una Relación de Hechos en la cual le notificaron al TPI la razón por la cual aún no habían firmado el contrato. En esencia, el motivo principal para ello era que ambas partes estaban en espera de que ARPE aprobara una enmienda, ya que se tuvo que ajustar una diferencia de cabida incorrecta en un plano que fue preparado por el agrimensor de Sea Beach. El 23 de enero de 2008, ARPE aprobó el plano de inscripción.
Luego de varios trámites interlocutorios, el 14 de febrero de 2008, Costa de Marfil le informó al TPI que había coordinado con Sea Beach para que el 8 de febrero firmaran la escritura y que éstos no comparecieron, que coordinó el 11 de febrero y tampoco comparecieron, que nuevamente coordinó para el 13 de febrero y no comparecieron. Solicitó al TPI que emitiera una orden para que Sea Beach compareciera el 27 de febrero y que de incumplir con dicha orden, se tuviera por desistida la compraventa. El mismo día, el TPI emitió una Orden dirigida a Sea Beach para que ésta informara su disponibilidad para otorgar la escritura. Así las cosas, el 28 de febrero de 2008, compareció Costa de Marfil mediante Moción en la que señaló que la otra parte no se presentó el 27 de febrero a las 5:00 p.m., hora de la citación. El 29 de febrero, compareció Sea Beach mediante Moción Informativa en la que señaló que la razón por la cual no había firmado la escritura era que entendía que la misma no estaba conforme a lo dictado por el TPI.
Así las cosas, el 24 de abril de 2008 compareció Sea Beach con una nueva representación y mediante una Moción Informativa y Solicitud de Retiro de Fondos, le pidió al TPI que le permitiera retirar los fondos consignados y que una vez Costa de Marfil cumpliera con su compromiso, se estableciera un término para realizar gestiones ante un banco y proceder a pagar la deuda. El 29 de abril, Costa de Marfil presentó una Réplica en la cual reiteró el hecho de que Sea Beach no había comparecido en varias ocasiones a la firma de la escritura. Además, dejó constancia en que no tenía objeción alguna a que Sea Beach retirara los fondos consignados. El 8 de mayo de 2008, Sea Beach presentó una Contestación a la Réplica y en la misma solicitó una vista urgente, ya que entendía que habían varias versiones contradictorias sobre los hechos. En cuanto al retiro de fondos, advirtió que su solicitud no era para dejar sin efecto la compraventa, sino más bien para poder utilizar el dinero y que luego de que Costa de Marfil cumpliera con su parte, se estableciera un plazo para volver a depositarlo.
El 19 de mayo de 2008, el Tribunal dictó una orden en la cual apercibió a Sea Beach a comparecer por escrito y mostrar causa suficiente en derecho por la cual no debía autorizar el retiro de los fondos consignados, dar por extinguida la opción y ordenar la devolución de los fondos de Costa de Marfil.
El 13 de junio de 2008, compareció Sea Beach mediante moción en la cual hizo un recuento del trámite procesal y presentó sus argumentos. Alegó que el plano que fue aceptado por todas las partes fue enmendado en *748 dos ocasiones, el 15 de octubre de 2007 y el 15 de enero de 2008, aumentando y disminuyendo cabidas, todas en beneficio de Costa de Marfil. Mencionó que en total hubo dieciocho (18) enmiendas hechas en esas dos fechas. Adujo que esto de por sí era un incumplimiento de las estipulaciones. Entonces, explicó que la razón por la cual no fue a firmar los días 8, 11 y 13 de febrero se debió a que el Plano de Inscripción no fue aprobado sino hasta el 19 de febrero de 2008, ya que por error no se incluyó la segregación de los solares. En cuanto al 27 de febrero, Sea Beach indicó que no era cierto que no hubiera comparecido ese día.
El 25 de junio de 2008, compareció Costa de Marfil y negó que el plano originalmente aprobado por ARPE fuera enmendado a espaldas del tribunal y que todos los cambios hechos a los planos y permisos fueron en constante comunicación y consulta con el entonces abogado de Sea Beach. Solicitó el señalamiento de una vista para que el TPI pudiera pasar juicio sobre la legitimidad y veracidad de las alegaciones hechas por Sea Beach.
Luego de varios trámites, el 9 de enero de 2009 se llevó a cabo una vista evidenciaría en la cual, con la anuencia de las partes, el TPI le concedió hasta el 19 de enero a Sea Beach para que hiciera una oferta transaccional.
El 26 de enero de 2009, Costa de Marfil presentó una moción informándole al TPI que no iba a aceptar la oferta de transacción hecha por Sea Beach y que procedería a cursarle una contra-oferta. Solicitó que se señalara una conferencia transaccional para el 6 de febrero. El 5 de febrero, Sea Beach solicitó el retiro de los fondos y que se le concedieran noventa (90) días para conseguir y consignar la suma retirada. El 6 de febrero, en la Conferencia Transaccional, Sea Beach informó que no era viable la contra-oferta porque el solar no estaba a la venta por haber un proyecto en el mismo y que si se ponía a la venta sería el solar con el proyecto. En dicha Conferencia, Costa de Marfil manifestó que no tenía objeción a que se retirara el dinero consignado y se dispusiera un término para que Sea Beach consignara o afianzara el dinero objeto de la compraventa. En dicha conferencia, los abogados manifestaron que por acuerdo no habría reclamo adicional de no poderse consignar el dinero. [2]
El 6 de febrero, Costa de Marfil presentó ante el TPI una Réplica a la moción que Sea Beach presentó el 5 de febrero. En dicha réplica, Costa de Marfil señaló que no tenía objeción a que se autorizara a Sea Beach retirar los fondos, condicionado a que en el término improrrogable de treinta (30) días, Sea Beach consignara o afianzara nuevamente la cantidad de dos millones doscientos mil dólares ($2,200,000). Ese mismo día, el TPI emitió una Orden en la cual autorizó el retiro de la suma consignada y ordenó a Sea Beach que, en el término improrrogable de treinta (30) días, o sea en o antes del 9 de marzo de 2009, consignara el precio acordado entre las partes como pago de la compraventa. Apercibió a Sea Beach de que si en dicho término no se efectuaba la consignación, se daría por extinguida la obligación que tenía Costa de Marfil de venderle el inmueble y se daría por desistida con perjuicio toda reclamación que tuviera contra ésta. Véase Apéndice del Recurso, a la página 353. (Énfasis suplido).
Así las cosas, el 11 de febrero de 2009, el señor Soto Concepción y el señor Oscar Soto Nieves (en adelante Soto Nieves), accionistas de Sea Beach, presentaron una moción, por derecho propio, en la cual solicitaron que se paralizara la entrega del retiro de fondos hasta tanto se resolviera la controversia. Indicaron que el presidente de la corporación, Jaime Matías Medina (en adelante señor Matías Medina), hizo caso omiso a una reunión para discutir la contra-oferta hecha por Costa de Marfil y que la entrega de los fondos ocasionaría serios perjuicios a la corporación. Entonces, el 12 de febrero de 2009, Sea Beach presentó una moción en la cual informó que habían surgido serias desavenencias entre sus accionistas y que estas diferencias hasta habían escalado en amenazas entre ellos. El presidente de la corporación, el señor Matías Medina, quien es el representante autorizado para el pleito y quien notifica a los demás accionistas de toda gestión que se realiza, le pidió al TPI que se notificara a los accionistas directamente para evitar conflictos. El mismo día, Sea Beach presentó una Moción en Reconsideración a Fijación de Término, ya que los accionistas de la Corporación entendían que el término de treinta (30) días impuesto por el tribunal era muy corto para conseguir una cantidad de dinero de tal *749 magnitud. Instó a que se les concediera el término de noventa (90) días originalmente solicitado. El 12 de febrero de 2009, el TPI emitió una Orden en la cual señaló que los accionistas no eran parte de este pleito, y que el tribunal no los haría parte, por lo que debían consultar con el abogado de la corporación o con sus propios abogados. Además, dicho foro señaló que el retiro ya se había autorizado y que los fondos fueron retirados.
El 13 de febrero, el foro de instancia dictó Resolución y Orden en la cual hizo constar que entendió como justo y razonable el pedido de Costa de Marfil de que Sea Beach tuviera el término de treinta (30) días para depositar o afianzar el dinero retirado que estaba consignado en forma de pago, y que de no cumplir con el término se entendería extinguida la opción de compra y compraventa ya perfeccionada. Señaló, además, que si el señor Soto Nieves y el señor Soto Concepción interesaban estar representados personalmente por abogado, deberían comparecer por escrito y justificar su intervención en el caso. Recalcó que las diferencias entre accionistas se rigen por las reglas y reglamentos corporativos y, en su defecto, por la Ley de Corporaciones (14 L.P.R.A. § et al.), ya que el demandante en este caso era una corporación que tiene capacidad jurídica independiente de los socios que la componen. Por ello, apuntaló que los accionistas no eran parte en este caso, ni el tribunal los convertiría en parte. El TPI enfatizó que Sea Beach no se quedaba sin remedio, ya que era cuestión de que depositaran nuevamente el dinero que recibieron el 12 de febrero. Incluso, señaló que si ya habían dispuesto del dinero, renunciaron con esa acción a cualquier planteamiento de que el término concedido era corto o largo. A raíz de lo susodicho, el TPI declaró No Ha Lugar la moción de reconsideración de Sea Beach.
El 26 de febrero de 2009, mediante Moción de Intervención, comparecieron el señor Soto Nieves y el señor Soto Concepción. Reiteraron su alegación de que la anuencia al retiro de fondos provocaría serios daños a su corporación, al igual que afectaría sus intereses como accionistas. Señalaron que en varias ocasiones habían intentado comunicarse con el presidente de la corporación y ello había resultado infructuoso. Alegaron que el dirimir las diferencias a través del mecanismo provisto por la Ley de Corporaciones, expondría a la corporación a un resultado o daño irreparable, ya que el TPI había decidido que Sea Beach tenía hasta el 9 de marzo de 2009 para consignar el valor de venta de la propiedad. Manifestaron que cualquier trámite en una acción separada expondría a la propia corporación a perder el derecho a adquirir la propiedad. Solicitaron, una vez más, poder intervenir conforme a la Regla 21.2 de Procedimiento Civil (32 L.P.R.A., Ap. Ill, R. 21.2) que permite la intervención en ciertos casos. Además, plantearon, por vez primera, que el término original de treinta (30) días dictado en la Resolución y Orden del 15 de noviembre de 2006 no había comenzado a transcurrir, ya que, según alegaron, no se había dado la condición del cumplimiento cabal con los trámites por parte de Costa de Marfil. En fin, el señor Soto Nieves y el señor Soto Concepción solicitaron al TPI ser admitidos como parte interventora y que se les concediera un término mayor para prestar fianza por el monto del precio de venta.
El 5 de marzo de 2009, el tribunal declaró No Ha Lugar la solicitud de intervención de los accionistas. Recalcó que el retiro de fondos fue a petición de la corporación y que las controversias entre accionistas se debían resolver conforme la Ley de Corporaciones.
El 9 marzo, día en que vencía el término concedido por el tribunal, Sea Beach compareció e informó que el 2 de marzo de 2009, la Junta de Accionistas despidió al entonces presidente de la corporación, el señor Matías Mendoza. De igual forma, despidió a los abogados que la estaban representando en el pleito y asumió una nueva representación. Solicitó que se les permitiera a los nuevos abogados asumir la representación legal de Sea Beach y se les concediera un término adicional de treinta (30) días para consignar o afianzar la suma de dinero que fue retirada.
El 11 de marzo, el TPI emitió una Resolución en la cual enfatizó que para el 30 de marzo estaba señalada la continuación de una vista evidenciaría. Además, acogió a la nueva representación legal, pero como representación adicional, ya que los anteriores abogados no habían presentado una solicitud de autorización para renuncia de representación. Asimismo, le concedió siete (7) días a Costa de Marfil para que mostrara causa *750 por la cual no se le debía conceder a Sea Beach hasta el 27 de marzo para consignar o afianzar los dos millones doscientos mil dólares ($2,200,000) en cumplimiento específico del contrato de compraventa y la sentencia dictada.
El 13 de marzo, Costa de Marfil presentó las razones por las cuales no era propio que se le concediera una prórroga adicional a Sea Beach. Argumentó que con anterioridad a la moción para retirar los fondos, nunca se cuestionó que el señor Matías Mendoza era el presidente de la corporación con autoridad para representar a la misma. Además, resaltó que el TPI declaró No Ha Lugar la Moción de Reconsideración en cuanto al término concedido, determinación que ya era final y firme.
El 27 de marzo de 2009, Costa de Marfil presentó una moción en la cual le informó al Tribunal que aunque éste no actuó sobre la moción presentada el 13 de marzo, el término transcurrió y Sea Beach no consignó ni afianzó los dos millones doscientos mil dólares ($2,200,000). Por lo tanto, solicitó al TPI que diera por extinguida su obligación de venderle a Sea Beach el inmueble y que diera por desestimada con perjuicio toda reclamación en el caso. El 27 de marzo de 2009, el TPI emitió una Resolución en la cual señaló que el término que proponía concederle a Sea Beach había transcurrido y aún no se había consignado la suma de dinero retirada. A tenor, declaró No Ha Lugar la moción de reconsideración presentada por Sea Beach el 12 de febrero de 2009 y reiteró ia Orden del 6 de febrero en la cual le apercibió a Sea Beach de que de no consignar el dinero para el 9 de marzo daría por extinguida la obligación de Costa de Marfil de venderle el inmueble en controversia. Ante ello, transcurrido el término adicional concedido sin que Sea Beach consignara o afianzara los dos millones doscientos mil dólares ($2,200,000), el TPI dio por desistida, con perjuicio, toda reclamación que Sea Beach tenía contra Costa de Marfil en este caso. En consecuencia a todo esto, dejó sin efecto el señalamiento de continuación de vista que se había pautado para el 30 de marzo de 2009.
Luego de la determinación del foro de instancia, el 13 de abril de 2009, Sea Beach presentó Moción de Reconsideración. Solicitó que se dejara sin efecto la resolución emitida y se señalara la continuación de la vista que se estaba celebrando para determinar si Sea Beach había cumplido o no con los acuerdos pactados. Alegó que no surgía de ninguna orden emitida por el TPI que se hubiera impuesto como condición sine qua non que Sea Beach tuviera que consignar el precio para poder continuar la tramitación de su reclamación. Afirmó que Costa de Marfil ni siquiera pudo transmitir el título de las dos (2) fincas que se obligó a venderle, según surgía del último estudio de título que había realizado y que quería presentar en una vista evidenciaria. Argumentó que el término para consignar el precio debía comenzar a transcurrir luego de que el tribunal escuchara la prueba y determinara si Costa de Marfil había cumplido o no cabalmente con los trámites previos a la escritura de compraventa. Solicitó, en fin, que el TPI dejara sin efecto la resolución emitida el 27 de marzo de 2009, ordenara la continuación de los procedimientos con el propósito de completar la vista evidenciaria y una vez se determinara si Sea Beach cumplió o no cabalmente con los trámites previos, se le ordenara a ésta consignar el dinero de la compraventa.
El 13 de abril de 2009, notificada el 22 de abril de 2009, el TPI declaró No Ha Lugar la solicitud de reconsideración.
El 27 de abril de 2009, Sea Beach presentó el recurso que nos ocupa. En el mismo argumenta que la determinación del TPI es contraria a derecho y contraria a la determinación que hizo este Tribunal el 28 de febrero de 2007. Recurre ante nos para que revoquemos tal decisión, ordenemos la continuación de los procedimientos, y determinemos que Sea Beach no está obligada a consignar el precio de la compraventa hasta tanto se determine que Costa de Marfil dio cumplimiento cabal a lo estipulado por las partes. Su planteamiento de error lee:
“Erró el Honorable Tribunal de Primera Instancia al desestimar el recurso de la Peticionaria bajo el argumento de que ésta incumplió con el contrato de opción de compra, cuando aún no se ha determinado si la *751 recurrida Costa de Marfil dio cumplimiento cabal a lo estipulado entre las partes y, por ende, la Peticionaria no estaba obligada a consignar el precio de la compraventa, alterando la determinación de este Honorable Tribunal, el cual es uno de mayor jerarquía.”
II
La controversia ante nuestra consideración se enmarca dentro de un alargado trámite de ejecución de sentencia en el cual el TPI ha emitido varias resoluciones y órdenes en aras de resolver o aclarar diversos conflictos antagónicos entre las partes. En cuanto a esto, y pese a las oportunidades provistas, una de las partes incumple, en específico, el acuerdo que había convenido con la otra y contraviene, a la vez, una orden emitida por el tribunal. Luego de examinar el expediente, así como los argumentos de derecho de ambas partes, circunscribimos nuestra decisión a determinar el efecto que tiene el acuerdo entre Sea Beach y Costa de Marfil en cuanto al retiro del dinero consignado.
Antes de entrar de lleno a esta interrogante, es preciso aclarar la determinación que fue hecha por otro panel de este Tribunal el 28 de febrero de 2007.
A. Alcance de la determinación del 28 de febrero de 2007
Sea Beach y Costa de Marfil llegaron a un acuerdo que fue acogido por el TPI mediante una Sentencia por Transacción el 27 de marzo de 2006. En el trámite hacía la consecución de ese acuerdo tuvieron diferencias en cuanto a si Sea Beach tenía un término para ejercer la opción o si meramente faltaba que se llevaran a cabo las gestiones para firmar un contrato de compraventa. El TPI decidió que había quedado en suspenso el otorgamiento de la escritura de compraventa y fijó a Costa de Marfil el término de sesenta (60) días para otorgar las escrituras y documentos necesarios. Una vez Costa de Marfil acreditara el cumplimiento cabal con sus obligaciones, Sea Beach tendría un término improrrogable de treinta (30) días para otorgar la escritura de compraventa o consignar en el tribunal el monto total del precio de ésta. Inconforme con esta decisión, Costa de Marfil presentó ante este foro un recurso de Certiorari, ya que pensaba que el contrato de opción de compra no había sido ejercitado a tiempo. Otro panel de este Tribunal denegó la expedición del auto, ya que entendió que lo que intentaba hacer Costa de Marfil era atacar la Sentencia por Transacción que ya era final y firme, y señaló, además, que la determinación del TPI era esencialmente correcta. En cuanto a esta particularidad, Sea Beach, en su alegato, resalta y reafirma rotundamente que Costa de Marfil incumplió con la decisión que en esos momentos emitió este tribunal y que el TPI, al haber puesto como condición sine qua non para la continuación de los procedimientos la consignación de lo retirado, varió esa determinación de entonces. Resulta inadecuado dicho señalamiento. Al denegar el recurso de Certiorari, este tribunal no le impuso al TPI ninguna condición, ni varió el curso que dictaba en esos momentos. Tampoco se adentró a interpretar su decisión, ni dejó vestigio alguno de cómo debía utilizar su criterio.
Las órdenes y resoluciones del TPI, que ya advinieron finales y firmes, estaban encaminadas en todo momento a poner fin a la controversia entre las partes y en nada alteraron, ni socavaron, la decisión que emitió este foro el 28 de febrero de 2007.
B. Repercusiones de lo concertado entre las partes
Una sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en tal forma que no queda pendiente nada más que la ejecución de la sentencia. García Morales v. Podrá Hernández, 164 D.P.R. 324, 332 (2005); Feliberty v. Soc. de Gananciales, 147 D.P.R. 834, 838 (1999), citando a Cárdenas Maxan v. Rodríguez, 119 D.P.R. 642, 655 (1987). Véase, además, J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo II, Publicaciones J.T.S., San Juan, P.R., 2000, a las páginas 680-681. La jurisprudencia ha interpretado que una sentencia es final si resuelve los méritos de la controversia o los derechos de las partes, sin dejar nada para una futura determinación. Cortés Román v. E.L.A., 106 D.P.R. 504, *752 509 (1977). Esta interpretación está recogida en la Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.1, que define el término "sentencia" como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa y la cual pueda ser apelada. Ramos y otros v. Colón Figueroa y otros, 153 D.P.R. 534, 543 (2001). Una sentencia adviene "firme" desde que expira el término para apelar o solicitar revisión sin que se haya atacado la misma o desde que se dicta sentencia en apelación o revisión. Véase, R. Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, San Juan, Puerto Rico, Michie, 1997, a la página 281. De otro lado, es importante señalar que los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. Management Adm. Ser. Corp. v. E.L.A., 152 D.P.R. 599, 606-607 (2000); In re: Tormos Blandino, 135 D.P.R. 573, 578 (1994).
Es norma ampliamente conocida que las personas, las partes o las entidades jurídicas, pueden obligarse, en general, mediante cualquier tipo de contrato imaginable si el mismo se consiente de manera voluntaria, se establece sobre un objeto cierto y se constituye mediando una causa. 31 L.P.R.A. §3391. En cuanto a esto, los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. 31 L.P.R.A. §3372. Dichos acuerdos se pueden llevar a cabo antes de comenzar, durante el trámite o después de adjudicado un caso o procedimiento en los tribunales. La libertad contractual no se encadena al ámbito cotidiano fuera de los foros judiciales, sino que también las partes pueden, durante el trámite procesal incoado, establecer nuevas pautas. Incluso, pueden hasta variar los derechos que ya les fueron adjudicados mediante dictamen final y firme, eso sí, sólo de forma válida, teniendo en cuenta las normas contractuales y la debida deferencia a los procedimientos entablados en los tribunales. Un dictamen firme constituye la ley del caso, pero no amarra enteramente a las partes. La parte por quien se resolvió a favor puede en todo momento, incluso durante el trámite post-sentencia, mediante su consentimiento y el de la otra, establecer nuevos parámetros de cumplimiento.
En definitiva, una parte sí puede renunciar a los derechos que le han sido adjudicados mediante dictamen final y firme. El límite a la autonomía de la voluntad y la renuncia de derechos milita sólo en la ley, la moral y el orden público. Veamos ahora cómo esto afecta la controversia entre Sea Beach y Costa de Marfil.
C. Efecto del acuerdo entre Sea Beach y Costa de Marfil en cuanto al retiro del dinero consignado
El 14 de junio de 2007, Sea Beach consignó en el TPI la suma de dos millones doscientos mil dólares ($2,200,000). La consignación de entonces fue válida en derecho y se realizó en consecución a no perder el derecho a que se dé el contrato de compraventa. Luego de varios trámites que ya hemos reseñado, el 5 de febrero de 2009, Sea Beach presentó una moción solicitando el retiro de los fondos. Entonces, el 6 de febrero de 2009, antes de que se permitiera el retiro, se celebró una vista en el TPI en la cual los abogados de ambas partes manifestaron que por acuerdo no habría reclamo adicional de no poderse consignar el dinero. [3] De igual manera, el mismo 6 de febrero de 2009, Costa de Marfil presentó una moción en la que señaló que no tenía reparo alguno al retiro de los fondos, siempre y cuando se le requiriera a Sea Beach consignarlos nuevamente dentro de un término improrrogable de treinta (30) días.
Mediante Orden, emitida el 6 de febrero de 2009, el TPI autorizó el retiro de los fondos. Dispuso para ello las siguientes condiciones:
“Se ordena además, a la parte demandante [Sea Beach] que en el término improrrogable de treinta (30) días, o sea, en o antes del 9 de marzo de 2009, se consigne el precio acordado entre las partes como pago de la compraventa de una propiedad de la parte demandada [Costa de Marfil], la cual es objeto del presente litigio, apercibiéndole a dicha parte demandante que si en dicho término de treinta días no se efectúa la consignación aquí ordenada, se dará por extinguida la obligación de la parte demandada de vender a la parte demandante dicho inmueble y se dará por desistida con perjuicio toda reclamación de la parte demandante contra la parte demandada instada en la presente reclamación.” Véase el Apéndice de la Solicitud de Certiorari, a la página *753 353.
El TPI, por medio de este orden, recogió el acuerdo convenido entre las partes de que de no poderse consignar el dinero, se cesaría de todo reclamo adicional. De conformidad con lo anterior, Sea Beach retiró el dinero sin objeción alguna a la orden emitida que, como hemos indicado, estaba basada en los acuerdos entre las partes. En el ínterin, el TPI conoció de las desavenencias entre los accionistas de Sea Beach, y además impartió resoluciones y órdenes en cuanto a esta situación colateral al término improrrogable de treinta (30) días. Entonces, el 10 de marzo de 2009, un día después de expirado el término, Sea Beach solicitó al TPI que se le concediera un término adicional. A pesar de que el escrito se presentó fuera de tiempo y de que ya Sea Beach había incumplido el acuerdo, por lo que renunciaba a sus derechos en el caso, el TPI emitió una resolución en la que ordenó a Costa de Marfil mostrar causa por la cual no debía extenderse el término para consignar el dinero hasta el 27 de marzo de 2009. El nuevo término que el foro de instancia contemplaba fijar pasó y Sea Beach ni consignó el dinero, ni acudió a explicar su indisposición. Ante tales circunstancias, el TPI, considerando lo acordado entre las partes y habiendo mediado una orden, dió por desistida, con perjuicio, toda reclamación que tenía Sea Beach contra Costa de Marfil.
El acuerdo entre las partes es claro, no habrá reclamo adicional de no poderse consignar el dinero. Ese acuerdo en nada contraviene la moral, la ley, ni el orden público. Fue y es válido. Ambas partes consintieron y el TPI fijó un término. Sea Beach, si no estaba de acuerdo con el término fijado, debió haberlo rechazado. No puede ahora retractarse del acuerdo y sus consecuencias. Incluso, el TPI le concedió más tiempo (exactamente diecinueve días) para poder hacer la consignación. Sin embargo, no lo hizo. El tiempo meramente pasó y la consignación en concepto de pago a la cual Sea Beach se obligó, no ocurrió. La consecuencia de su incumplimiento ataba a Sea Beach a lo pactado.
El mero hecho de retirar los fondos no extinguió la obligación de Costa de Marfil de vender, lo que sí extinguió la obligación de vender fue la inacción e involuntariedad por parte de Sea Beach en no consignar los fondos en la fecha pactada. Ese incumplimiento activó el acuerdo que hizo con Costa de Marfil y, por ende, le estaba vedado presentar algún reclamo adicional.
m
En resumen, Sea Beach acordó, durante el trámite post-sentencia, obligarse con Costa de Marfil a que de no poder consignar el dinero a tiempo renunciaría a cualquier reclamo adicional. Ese acuerdo fue y es válido y, por lo tanto, vinculante. Sea Beach no consignó el dinero que retiró durante el tiempo que le fue concedido. Incluso, ese término fue alargado y ni siquiera, durante ese tiempo, expresó reparo alguno ante el TPI. En sus argumentos, Sea Beach señala que el término de treinta (30) días que tenía para consignar el dinero nunca comenzó a transcurrir, ya que no se había dado la condición del cumplimiento cabal con los trámites por parte de Costa de Marfil. Resulta innecesario discutir en derecho cuándo debió hacerse la consignación. Este argumento se contrapone límpidamente a la manifestación recogida como acuerdo entre las partes de que de no poder consignar el dinero no habrá reclamo adicional. Independientemente de cuándo correspondía en derecho hacer la consignación, las partes pactaron lo que sería la determinación del caso de no poderse consignar el dinero a tiempo. Atender ese reclamo es tratar de circunvalar la controversia, obviando el pacto entre las partes y sus consecuencias.
Por los fundamentos expuestos anteriormente, se expide el auto solicitado y se confirma la resolución recurrida.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
*754 Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 19

. En cuanto a este término, hay que subrayar que para el 31 de marzo de 2006, la vigencia del contrato estaba sujeta a las prórrogas verbales que concedía Costa de Marfil y que por esto el término no se había consumado en contra de Sea Beach.

. Véase Minuta del 6 de febrero de 2009, Apéndice del Recurso, a la página 347.

. Véase la Minuta en el Apéndice del Recurso, a la página 347.