Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| LUIS ENRIQUE LANDESTOY ZAPATA **APELADO** v CONSEJO DE TITULARES Y LA JUNTA DE DIRECTORES DEL CONDOMINIO PLAYA DORADA DE ISLA VERDE **APELANTES** | KLAN202400837 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina Caso Núm. CA2021CV02125 Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 24 de octubre de 2024.

### I.

Comparece ante nos el Consejo de Titulares y Junta de Directores del Condominio Playa Dorada (apelantes) mediante la presentación del *Alegato de la parte apelante* presentado el 10 de septiembre de 2024. En el presente recurso, nos solicitaron que dejemos sin efecto la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario) el 16 de agosto de 2024 y notificada el 21 de agosto de 2024.[1] En la referida *Sentencia*, el TPI declaró Con Lugar la *Demanda* radicada por Luis Enrique Landestoy Zapata (señor Landestoy Zapata o apelado). En la misma, el foro primario ordenó a los apelantes que pagaran la cantidad de dos mil ciento cinco dólares con sesenta y seis centavos ($2,105.66) por concepto de una derrama que fue dejada sin efecto en el 2008. Adicionalmente, ordenó el pago de mil cincuenta y nueve

---

[1] Apéndice de la Apelación, Anejo 1, págs.16-22.

dólares ($1,059.00) correspondientes al cobro de una derrama de agua que tampoco se ejecutó.[2] Inconforme con el dictamen, los apelantes reclamaron que el TPI carecía de jurisdicción puesto que el Departamento de Asuntos del Consumidor (DACO) es quien tiene jurisdicción primaria exclusiva para atender los reclamos de las acciones u omisiones de la Junta de Directores.

El 11 de septiembre de 2024, emitimos una *Resolución*, indicándole al señor Landestoy Zapata que tenía hasta el 10 de octubre de 2024 para presentar su alegato en oposición al presente recurso.

El 10 de octubre de 2024, el apelado radicó *Alegato en oposición al recurso de apelación*. En síntesis, este alegó que DACO no tenía jurisdicción para atender el reclamo de cobro de dinero. En esa línea, este presentó la *Demanda* en el TPI por ser el foro adecuado para atender la controversia.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y procederemos a discutir los hechos pertinentes a la controversia ante nuestra consideración.

**II.**

El caso de marras tiene su génesis el 16 de agosto de 2021 con la presentación de la *Demanda* por parte del señor Landestoy Zapata.[3] Al momento de los hechos de la *Demanda*, el señor Landestoy Zapata residía en el Condominio Playa Dorada localizado en Isla Verde en el municipio de Carolina, Puerto Rico. Durante su residencia en el condominio, el Consejo de Titulares decidió realizar una derrama que ascendió a tres millones de dólares ($3,000,000.00). El apelado pagó dos mil ciento cinco dólares con sesenta y seis centavos ($2,105.66) para la derrama aprobada.[4] En

---

[2] Íd. Anejo 1, pág. 21-22.
[3] Véase la Anotación Judicial Núm. 1 de la Entrada del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[4] Apéndice de la Apelación, Anejo 1, pág. 18.

el 2008 el Consejo de Titulares determinó no realizar la derrama. Sin embargo, el apelado alegó que no le fue devuelto el monto que pagó por la derrama cancelada. Tiempo después, el Consejo de Titulares decidió realizar una derrama de agua en el año 2010. Se desprende de la *Demanda* que, el señor Landestoy Zapata pagó dos veces la cantidad solicitada para la derrama de agua ya que le informaron que el primer cheque no se pudo cobrar. Empero, la derrama de agua tampoco se realizó y no le fue devuelta la suma de mil cincuenta y nueve dólares ($1.059.00) pagados. En conclusión, el apelado sostuvo que los apelantes le adeudaban al apelado la suma total de tres mil ciento sesenta y cuatro dólares con sesenta y seis centavos ($3,164.66). Tras varios intentos infructuosos de cobro, el señor Landestoy Zapata instó la *Demanda* ante el TPI.

El 7 de diciembre de 2021, los apelantes radicaron su *Contestación a Demanda*. Estos indicaron que no procedía como cuestión de derecho la reclamación del dinero adeudado. Los apelantes adujeron que la causa de acción debió ser presentada ante DACO por ser el foro con jurisdicción primaria para atender la controversia por versar sobre una acción u omisión contra la Junta de Directores. Según los apelantes, la acción presentada ante el TPI estaba prescrita por ser radicada fuera del término de prescripción según el Art. 65 Ley de Condominios, Ley Núm. 129 del 16 de agosto de 2020, según enmendada, 31 LPRA sec. 1921j. Por último, estos expresaron que no le adeudaba ninguna cantidad de dinero, relacionadas a las derramas, al señor Landestoy Zapata.

Luego, el 26 de septiembre de 2022, los apelantes radicaron una *Moción solicitando desestimación*.[5] En la referida *Moción*, estos insistieron que la controversia sobre cobro de dinero debió haber sido atendida ante DACO y no ante el TPI.[6] Asimismo, el foro que

---

[5] Íd. Anejo 2, págs. 23-26.
[6] Íd. Anejo 2, pág. 23.

tenía jurisdicción exclusiva y primaria para atender la reclamación era DACO.[7] Por lo que los apelantes solicitaron que se desestimase la demanda de manera sumaria ante la falta de jurisdicción o iniciar la reclamación en el foro apropiado. El 21 de octubre de 2022, el apelado radicó la *Oposición a moción de desestimación* indicando que DACO no tiene jurisdicción para atender reclamaciones sobre cobro de dinero. Además, este alegó que la controversia no se trataba sobre un asunto relacionado al condominio. El 24 de octubre de 2022, el TPI dictó y notificó el mismo día, No Ha Lugar la *Moción de desestimación*.[8]

Posteriormente, el 31 de octubre de 2022, los apelantes radicaron una *Moción de Reconsideración*.[9] En la referida *Moción*, los apelantes aludieron que debió declararse Ha Lugar la *Moción de Desestimación*. También, arguyeron que los fundamentos del señor Landestoy Zapata eran contrarios en derecho y los hechos no eran ciertos. En esa línea, el apelante señaló que conforme al Art. 65 de la Ley de Condominios, Ley 129-2020, según enmendada, *supra*, las acciones u omisiones de la Junta de Directores deben atenderse ante DACO por ser el foro con jurisdicción.

A tenor con lo anterior, el 21 de agosto de 2024, el foro primario emitió *Sentencia*.[10]

En la mencionada *Sentencia*, se consignó que las partes estipularon los siguientes hechos:

1. El proyecto de vivienda conocido como Condominio Playa Dorada es un Condominio privado sometido a un Régimen de Propiedad Horizontal conocido como Ley de Condominios de Puerto Rico o Ley 129 del 16 de agosto de 2020.
2. Que el Sr. Luis Enrique Landestoy Zapata es titular de un apartamento A ubicado, en el Condominio Playa Dorada.
3. Que el Sr. Luis Enrique Landestoy Zapata entregó los cheques número 225 del 2 de julio de 2010 por la cantidad de $1,019.00. y cheque número 25465 del 22 de julio de 2010 por la cantidad de $1,059.00.

---

[7] Íd.
[8] Véase la Anotación Judicial Núm. 38 del expediente digital del caso en SUMAC.
[9] Apéndice de la Apelación, Anejo 3, págs. 27-30.
[10] Íd. Anejo 1, págs.16-22.

Durante el juicio se marcó en evidencia los siguientes documentos:

1. Exhibit 1 de la parte demandante (apelado). Copia cheque 1003 por $2,105.66 de la cuenta de Soraya Conde.
2. Exhibit 2. Copia de cheque 025465 por $1,059.00 emitido el 22 de julio de 2010.
3. Exhibit 3. Carta 202 de junio de 2016 (5 páginas).
4. Exhibit A de la parte demandada (apelante). Historial de pago del apartamento de la parte demandante.[11]

Además, el TPI formuló las siguientes determinaciones de hecho:

1. La parte demandante la compone Luis Enrique Landestoy Zapata, quien es mayor de edad, médico de profesión, y vecino del Municipio de Carolina, Puerto Rico.
2. La parte demandada la compone la Junta de Directores y el Consejo de Titulares del Condominio Playa Dorada.

[3.] Desde al año 1995, el demandante Luis Enrique Landestoy Zapata ha sido dueño del apartamento A 313 ubicado, en el Condiminio Playa Dorada y ha estado realizando pagos de mantenimientos mensuales y las derramas decretadas por el Condominio Playa Dorada.

[4.] La prueba apreciada por el Tribunal estableció que, para el año 2008, los directores del Condominio Playa Dorada decretaron una derrama de $3,000,000.00. De dicha cantidad el demandante Luis Enrique Landestoy Zapata pago la suma de $2,0105.66. Dicha derrama [fue] dejada sin efecto, sin embargo, la cantidad fue pagada por el demandante y no le fue devuelta.

[5.] La prueba apreciada por el Tribunal estableció que, el demandante Luis Enrique Landestoy Zapata, para el año 2010, pago la suma de $1,019.00 mediante cheque, para pagar derrama de agua decretada por el Condominio Playa Dorada. En principio, el demandado notificó al demandante que dicho cheque fue devuelto. Por tal razón, el demandante realizó un segundo pago por la cantidad de $1,059.00. Este pago fue cobrado por el demandado.

[6.] La prueba apreciada por el Tribunal estableció, que eventualmente el primer pago de $1,019.00 [del] demandado para pagar la derrama del agua del año 2010, también fue pagado por el demandante.

[7.] La Sra. Greisha López es contable de profesión y desde el año 2015, presta servicios como tal al Condominio Playa Dorada. El testimonio de la Sra. López se limitó a expresar la información que surge del historial de pago del apartamento de la parte Demandante. Sin embargo, la testigo Greisha López admitió dentro de su interrogatorio que para la fecha en que se preparó dicho historial de pago, no prestaba servicio para el demandado y tampoco introdujo la información que surge de dicho historial de pago.

[8.] La Sra. Geisha López no pudo explicar a satisfacción del Tribunal, como es posible que el demandado pagó en dos ocasiones la derrama del agua del año 2010, le devuelven un pago (según el documento, pero como cuestión de hecho, no hubo tal desembolso) y arreglaron seguida, le imputan al demandante una deuda en dicho concepto.

[9.] El Sr. Eduardo Janer Meléndez reside en el Condominio Playa Dorada desde el año 2005, luego de la ocurrencia de los hechos que motivan la demanda.

---

[11] Íd. Anejo 1, pág. 17.

> Desde el año 2022, Janer Meléndez se desempeña como presidente de la junta de directores del Condominio Playa Dorada.
>
> [10.] En lo pertinente el Sr. Eduardo Janer Meléndez, declaró que desde el año 2006, el Condominio Playa Dorada ha decretado cinco (5) o seis (6) derramas. El testigo no abundó en que consistieron dichas derramas. Tampoco expresó o presentó prueba de que el demandado adeude alguna de las derramas que mencionó en forma general.[12]

Tras varios incidentes procesales, el TPI determinó que, para el año 2008, el Consejo de Titulares y Junta de Directores del Condominio Playa Dorada decidió llevar a cabo una derrama pero fue dejada sin efecto.[13] Consecuentemente, los apelantes incumplieron en devolver el dinero que el apelado pagó por la derrama aprobada.[14] Asimismo, para el año 2010 los apelantes organizaron una derrama de agua. Para la aludida derrama, el apelado pagó la cantidad solicitada pero los apelantes indicaron que no pudo ser cobrada. Nuevamente, el apelado sufragó la misma cantidad solicitada. Ante la prueba desfilada, el TPI decidió que en realidad los apelantes cobraron dos veces la misma cantidad, contrario a lo que alegaron. Así las cosas, el TPI ordenó a los apelantes pagar la cantidad de dos mil ciento cincuenta y cinco dólares con sesenta y seis centavos ($2,105.66) por concepto de una derrama que fue dejada sin efecto para el año 2008.[15] Además, ordenó el pago de la cantidad de mil cincuenta y nueve dólares ($1,059.00) correspondiente al pago que realizo el apelado, dos veces, por la derrama de agua en el año 2010. Además, se ordenó el pago de dos mil dólares en concepto de honorarios de abogados por temeridad ($2,000.00).[16]

Inconforme con tal determinación, el 10 de septiembre de 2024, los apelantes acudieron ante nos mediante la presentación del

---

[12] Íd. Anejo 1, págs.17-19.
[13] Íd. Anejo 1, pág. 20.
[14] Íd.
[15] Íd. pág. 21.
[16] Íd. pág. 22.

*Alegato de la Apelante* de epígrafe y le imputaron al TPI los siguientes errores:

> Erró el Honorable Tribunal de Primera Instancia, abusó de su discreción y cometió error manifiesto al asumir jurisdicción en el caso de marras.

> Erró el Honorable Tribunal de Primera Instancia, cometió el error manifiesto en derecho, al no desestimar la acción de marras por aplicabilidad de la Ley de Condominios y el impedimento estatutario en ella establecido.

> Erró el Honorable Tribunal de Primera Instancia, cometió error manifiesto al concluir que el caso de marras en un caso de cobro de dinero.

En síntesis, argumentaron que el foro con jurisdicción para atender la causa de acción presentada en contra de ellos era DACO y no el TPI por ser un condominio sometido al régimen de propiedad horizontal. Por ende, DACO es el foro correspondiente para atender las acciones u omisiones de la Junta de Directores según lo establecido en el Artículo 65 de la Ley 129 del 16 de agosto de 2020, según enmendada, *supra*. Según el apelante, el señor Landestoy Zapata cumplió con tres de los cuatro requisitos que establece el mencionado artículo para iniciar una causa de acción en contra de la Junta de Directores. Primeramente, cumplió con el requisito de dirigir una causa de acción en contra de la parte idónea que es la Junta de Directores y el Consejo de Titulares del Condominio Playa Dorada. Segundo, cumplió con el requisito de ser el titular del apartamento por ser la parte autorizada para iniciar la causa de acción. Como tercer requisito, el apelado cumplió en iniciar la reclamación contra los apelantes por tratarse de una acción u omisión por parte de la Junta de Directores y el Consejo de Titulares del Condominio Playa Dorada. Sin embargo, el apelado incumplió con el cuarto requisito al no iniciar la *Demanda* ante DACO por este ser el foro con jurisdicción exclusiva y primaria para atender dicha reclamación. Consecuentemente, por tratarse de una causa de acción u omisión de la Junta de Directores y el Consejo de Titulares, le corresponde a DACO atender el mismo.

El 10 de octubre de 2024, el apelado presentó *Alegato en oposición al recurso de apelación*. A modo de sinopsis, este indica que el recurso apropiado debió ser *certiorari* cuando le denegaron la *moción de desestimación* presentada por estos. Asimismo, arguyó que el Artículo 65 de la Ley 129 del 16 de agosto de 2020, según enmendada, *supra*, se trata de las acciones u omisiones que pueden impugnar los titulares sobre la Junta de Directores ante DACO. Así las cosas, el apelado alegó que el TPI es el foro con jurisdicción para atender la acción de cobro de dinero debido a que el referido articulo no le confiere jurisdicción a DACO para atender este tipo de reclamación. Por ende, no le correspondía a DACO la acción de cobro de dinero. De igual modo, la omisión de no pagar convertía el dinero retenido en deuda. El señor Landestoy Zapata señaló que su reclamo no es por una acción u omisión de la Junta de Directores si no del dinero que se le adeudaba.

### III.

### A.

La jurisdicción es la autoridad que tiene el tribunal para poder resolver casos y controversias. ***Torres Alvarado* v. *Madera Atiles***, 202 DPR 495 (2019). En Puerto Rico los tribunales ostentan la jurisdicción general, lo que significa que tienen "autoridad para atender cualquier causa de acción que presente una controversia propia para adjudicación, a menos que no tengan jurisdicción sobre la materia". ***Rodríguez Rivera* v. *De León Otaño***, 191 DPR 700, 708 (2014). Sin embargo, el Estado es quien puede otorgar o privar a un tribunal de jurisdicción sobre la materia mediante legislación a esos efectos. ***Rodríguez Rivera* v. *De León Otaño***, supra, pág. 708-709. La ausencia de falta de jurisdicción conlleva los siguientes efectos en los dictámenes emitidos: (1) no es susceptible (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede

éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *González v. Mayagüez Resort & Casino,* 176 DPR 848, 855 (2009).

Por otro lado, la doctrina de jurisdicción primaria es una de autolimitación judicial para determinar cuál foro es el apropiado para atender la controversia. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1057 (2013). La jurisdicción primaria tiene dos vertientes que son: la jurisdicción primaria concurrente y la jurisdicción primaria exclusiva. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, 204 DPR 89, 103 (2020). La primera vertiente es cuando el tribunal permite que la agencia administrativa o el tribunal tengan jurisdicción. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, pág. 103. En la jurisdicción primaria concurrente, tanto el foro judicial como el administrativo tienen jurisdicción, pero la primacía se cede a la agencia por esta tener el conocimiento especializado. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, pág. 103. En cambio, cuando se trata de la jurisdicción primaria exclusiva la ley distingue que la agencia será el único foro autorizado para resolver tal controversia. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, pág. 103. Cabe destacar que, la designación de jurisdicción exclusiva debe ser clara y especifica. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, pág. 104. Para poder determinar si la jurisdicción es exclusiva corresponde hacer un análisis sobre si la delegación es expresa o es implícita. *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, supra, pág. 104. Además, si la jurisdicción es exclusiva permite la revisión judicial hasta que la

agencia emita su determinación final. ***Beltrán Cintrón* v. *Estado Libre Asociado de Puerto Rico***, supra, pág. 104.

**B.**

El Artículo 2 de la Ley de Condominios, Ley Núm. 129-2020, según enmendada, 31 LPRA sec. 1921a, *et seq.*, establece que, esta ley se aprobó con el propósito, entre otros, de viabilizar la propiedad individual sobre un apartamento, que forma parte de un edificio o inmueble sometido al Régimen de Propiedad. A su vez dispone que, en el ejercicio y el reclamo de sus derechos, los titulares actuarán conforme a los principios de la buena fe, de la prohibición de ir en contra de sus propios actos y la del abuso del derecho. Íd. 31 LPRA sec. 1921a. En esa línea, la Ley de Condominios provee mecanismos para los conflictos inevitables que surgen del modus vivendi bajo un régimen de propiedad horizontal. ***Srio. D.A.C.O.* v. *J. Condominos C. Martí***, 121 DPR 807, 814 (1988). Asimismo, otro propósito que tiene la ley es la creación de un marco organizacional de un gobierno interno y canalizar los problemas de la vida comunitaria. ***Srio. D.A.C.O.* v. *J. Condominos C. Martí***, supra, pág. 815. Como cuestión de umbral, la ley detalla el marco organizacional del gobierno interno, cuyo organismo rector y deliberativo es el Consejo de Titulares que a su vez rige, según la Ley de Propiedad Horizontal, la escritura matriz y el reglamento. ***Srio. D.A.C.O.* v. *J. Condominos C. Martí***, supra, pág. 815.

Como parte de los organismos internos en los condominios está el Consejo de Titulares y la Junta de Directores. M. Godreau y M. Hernández Gutiérrez, *El Condominio: El Régimen de Propiedad*, 3era ed. rev., San Juan, Ed. Situm, 2023, pág. 235. El Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal. Íd. 31 LPRA sec. 1922t. Sus resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de

ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio. Íd. 31 LPRA sec. 1922t. De otra parte, la Junta de Directores es el órgano ejecutivo que dirige (o la persona, en caso del Director), que dirige y supervisa la gestión administrativa del edificio de acuerdo a las directrices contenidas en la escritura, en el Reglamento y en los acuerdos del Consejo de Titulares. Godreau y Hernández, *op.cit.* pág. 235. La responsabilidad fundamental de la Junta de Directores es velar por el buen funcionamiento de los condominios logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, *supra*, la de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares. **Consejo de Titulares v. Gómez Estremera**, 184 DPR 407, 418 (2012).

De haber alguna acción contraria u omisión por parte de la Junta de Directores, el Artículo 65 de la Ley de Condominios establece que:

> "Las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador así como los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares en los siguientes supuestos: a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio; b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular; c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra. Los titulares que sean dueños de apartamentos en condominios que sean dedicados exclusivamente a uso comercial, tendrán que presentar la impugnación ante el Tribunal de Primera Instancia, el cual tendrá jurisdicción primaria y exclusiva. En el caso de los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador. Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación. En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores,

del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años."
Íd. 31 LPRA 1923j.

La Ley de Condominios, *supra*, le encomendó a DACO la rápida adjudicación de reclamos de los condómines relativos a la administración del edificio. ***Consejo de Titulares v. Gómez Estremera***, supra, pág. 420. No obstante, la jurisdicción exclusiva del DACO no se extiende a toda causa de acción que emana de un condominio sometido al régimen de propiedad horizontal. ***Consejo de Titulares v. Gómez Estremera***, supra, pág. 421. Se puede presentar ante DACO, las acciones de impugnación de los acuerdos del Consejo de Titulares, de las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda. ***Amil v. Dir. Cond. Pumarada***, 156 DPR 495, 501 (2002). Subsiguiente, las determinaciones, acciones u omisiones de la Junta de Directores que se pueden impugnar, tienen que estar relacionadas a la administración del inmueble y que sean gravemente perjudiciales o contrarias a la Ley, la escritura de constitución o al reglamento. García Cárdenas, *Propiedad Horizontal: Ley de Condominios 2020*, 1era ed. rev., 2023, MJ Editores, pág. 193.

A modo de excepción, DACO **no** tiene jurisdicción para atender asuntos que pueden realizar entre sí los titulares o aquellas presentadas por el director de la Junta de Directores en nombre del Consejo de Titulares. ***Consejo de Titulares v. Gómez Estremera***, supra, pág. 420. En el citado caso, el Tribunal Supremo resolvió que, "al Departamento nunca le ha sido conferida jurisdicción para atender reclamos que puedan realizarse entre sí los titulares o aquellas presentadas por el director o la Junta de Directores en representación del Consejo de Titulares, contra un titular..."

***Consejo de Titulares* v. *Gómez Estremera***, supra, pág. 420. En esa línea, el máximo foro judicial dispuso que en aquellos casos en que el Consejo de Titulares demanda a un titular en cobro de dinero por daños y este reconviene, la reconvención compulsoria debe verse en el TPI. M. García Cárdenas, *op. cit,* pág. 197. Además, la Regla 23 del Reglamento de Condominios, Reglamento 386 del 6 de junio de 2022, dispone las circunstancias en que DACO tiene jurisdicción:

> Las **acciones u omisiones** de la Junta de Directores, Administrador Interino, Agente Administrador, Sindico, así como **los acuerdos del Consejo de Titulares** podrán ser impugnados ante el Departamento por los titulares en los siguientes supuestos:
> (a) Cuando sean contrarios a la Ley de Condominios de Puerto Rico, la escritura matriz, el reglamento del condominio y a este Reglamento.
> (b) Cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular.
> (c) Cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.
> El Agente Administrador será responsable para cualquier determinación, actuación u omisión del Asistente Administrador.
> Énfasis suplido.

**C.**

Para que proceda una acción de cobro de dinero la deuda tiene que ser líquida, vencida y exigible. ***Ramos y Otros* v. *Colón y Otros***, 153 DPR 534, 546 (2001). Una deuda es líquida cuando la cuantía de dinero es cierta y determinada. ***Ramos y Otros* v. *Colón y Otros***, 153 DPR 534, 546 (2001). Es parte del principio correlativo del deudor a pagar sus deudas ciertas y determinadas, líquidas, o liquidables, exigibles por estar vencidas y vivas o subsistente, no se priva al deudor de sus bienes o de cosa propia, sino que éstos pertenecen a sus acreedores. ***Freeman* v. *Tribunal Superior***, 92 DPR 1, 25 (1965).

**IV.**

En el caso de marras, el TPI emitió una *Sentencia* determinando que procedía la acción de cobro de dinero instada por el apelado en contra del Consejo de Titulares y Junta de Directores

del Condominio Playa Dorada. El TPI decretó que los apelantes le adeudaban la suma de dinero reclamada por el apelado. Así las cosas, el foro primario ordenó a los apelantes que devolviesen la totalidad del dinero reclamado por el apelado.

En desacuerdo, los apelantes acudieron ante esta curia indicando que procedía la aplicación de la Ley de Condominios, Ley 129 del 16 de agosto de 2020, según enmendada, *supra,* para adjudicar esta controversia. Según alegan, DACO es el foro con jurisdicción para atender las acciones u omisiones de la Junta de Directores en condominios dedicados a la vivienda residencial. Por ende, la reclamación del apelado debía ser iniciada en DACO y no en el TPI.

Por estar relacionados los señalamientos de error, procederemos a discutirlos en conjunto.

La doctrina de jurisdicción versa sobre el foro autorizado para atender la controversia que se pretende adjudicar. Sobre este particular, la vertiente de jurisdicción primaria exclusiva le cede la jurisdicción a la agencia por tener el conocimiento especializado que al foro judicial. Es menester señalar que, no constituye un impedimento poder acudir al foro judicial una vez la agencia emita su determinación final. En esa línea, el Artículo 65 de la Ley de Condominios, Ley 129 de 16 de agosto de 2020, según enmendada, *supra,* establece que, DACO tiene jurisdicción para atender las acciones u omisiones de la Junta de Directores en los condominios dedicados al uso residencial. No obstante, las acciones u omisiones que se pueden impugnar están taxativamente enumeradas: a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio; b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular; c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la

compra. Íd. 31 LPRA 1921j. En esa línea, las acciones u omisiones impugnables tienen que estar relacionadas a la administración de la Junta de Directores o a los acuerdos del Consejo de Titulares. Como excepción, se puede acudir directamente al TPI de ser una reclamación entre titulares o que la Junta de Directores la realice en nombre de los titulares.

En el caso ante nos, la acción de cobro de dinero fue presentada por un titular que reside en un condominio dedicado al uso residencial. Adviértase que, la acción de cobro de dinero **no** está contemplada ni mencionada dentro de las acciones u omisiones en que DACO tiene jurisdicción para poder intervenir. Es menester señalar que, la acción de cobro de dinero presentada por el apelado no es una relacionada a alguna acción u omisión de los apelantes con respecto a la administración del condominio. Tampoco está impugnando un acuerdo del Consejo de Titulares. Es forzoso concluir que, el TPI si tenía jurisdicción para dilucidar la acción de cobro de dinero presentada en contra de los apelantes. Consecuentemente, el TPI no abusó de su jurisdicción y actúo conforme a derecho.

Por los fundamentos antes expuestos, procede confirmar la *Sentencia* apelada a los efectos de ordenar al Consejo de Titulares y Junta de Directores del Condominio Playa Dorada pagar lo ordenado por el foro primario.

**V.**

Por los fundamentos pormenorizados, se *confirma* la *Sentencia* del TPI.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones